# NEW YORK COMMON PLEAS.

## Andrew Fash agt. Martin Kavanagh.

Where a *monthly tenant* occupies rooms of a landlord, with an agreement to pay *rent in advance*, and leaves the premises the latter part of the month, he is not liable for the rent of the *subsequent month*, which has not become due.

Where it appeared that the filth from a privy, either *on* or *adjoining* the premises, flowed over the apartments occupied by the tenant, without any fault on his part, and rendered them unfit to occupy, the tenant was justified in *abandoning* them under the provisions of the " act in relation to the rights and liabilities of owners and lessors, and of lessees and occupants of buildings," passed April 13, 1860.

The injury to the premises contemplated by this act, to authorize a surrender of possession, must be of a physical nature, such as if done by the landlord would amount to an *eviction* of the tenant from the whole or part of the demised premises.

The occupant of *apartments* in a *tenement house*, is not bound either to see to the erection of a proper *sink or privy* upon the premises, or to cause it to be *emptied* to prevent an overflow. This is a matter which the *landlord* is required to look after and prevent, or else to stand to the consequences.

*General Term, March,* 1861.

Daly, Brady and Hilton, *JJ.*

By the court, Hilton, J.   The defendant occupied rooms in the plaintiff's building, under a hiring by the month, the rent being payable in advance.   This action is brought for the month's rent, payable August 1st, and the defence seems to be twofold : 1.   That he removed from the premises in the month of July, and before the rent claimed became due.   2.   That before he left, the contents of the privy attached to the house overflowed his apartments, rendering them untenantable and unfit for occupancy ; and having been on this account obliged to abandon them, he was not thereafter bound or liable to pay rent.

I think the proof at the trial entitled him to judgment on both grounds.   The defendant testified positively that he left on the 23d July, and then offered the keys to the plaintiff's agent, who declined to receive them.   That at the time, the filth from the privy had flowed over his

apartments, rendering them untenantable and unfit to oc-
cupy.   The plaintiff swore that he was told the defendant
had left the latter part of July, and his agent testified that
the defendant offered the keys before the 1st of August.
In·addition to this, Donahue, a tenant in the same house,
stated, that at, the time defendant left, the filth was ankle
deep in his apartments, which appear to have been on the
basement floor; that he took the keys to the plaintiff's
house about a week thereafter, and thinks the keys were
then taken by him, from about 10th to 15th August.   It is
perhaps proper to add, that the plaintiff's agent testified
that the filth of which defendant complained, came from
the adjoining premises; also, that the plaintiff, in his direct
examination, stated that the defendant was in possession of
the premises on the 15th August; but I think it must be
assumed that this was rather a conclusion of his mind than
a statement of a fact within his knowledge, as it appears
he did not live on the premises.   If this view was not cor-
rect, he would not have closed his testimony with the
remark, that he " was told the defendant had left the pre-
mises the latter part of July last," without explanation or
comment.

   I feel bound, therefore, to conclude from the testimony
at the trial, that the defendant left before the 1st of August,
and as his hiring was only for the month, he terminated his
tenancy before the rent sued for accrued.

   The reasons he gave for leaving were, in this view of the
case, unnecessary; but I think there can be no doubt of
their sufficiency;   and that they would have justified an
abandonment under the provisions of the " act in relation
to the rights and liabilities of owners and lessors, and of
lessees and occupants of buildings," passed April 13, 1860,
( *Sess. Laws, p.* 592,) which declares that the occupant of
any building which shall without any fault or neglect on
his part be destroyed, or be so injured by the elements or
any other cause, as to be untenantable and unfit for occu-

pancy, shall not be liable or bound to pay rent after such destruction or injury, unless otherwise expressly provided by written agreement or covenant; and the occupant may, therefore, quit and surrender possession of the premises so leased or occupied.

The injury here contemplated must obviously be of a physical nature, such as if done by the landlord would amount to an eviction of the tenant from the whole or part of the demised premises. It must be to the building occupied, and not caused by the privity or procurement of the tenant, or by his neglect or want of proper care. If it be of the nature the present case discloses, I have no doubt it would fall within the class of injuries which the law was passed to meet.

As an occupant of apartments in a tenement house, the defendant was not bound to either see to the erection of a proper sink or privy upon the premises, or to cause it to be emptied, to prevent an overflow.

This was a matter which the landlord, who by maintaining a building of this class—one of those so called modern improvements which the necessities of the present day have required to be erected in the compact portion of our city, where rents are high and the poor abound—was required to look after and prevent, or else stand to the consequences.

I do not mean to be understood as holding that a landlord is required, after he has rented a house; to attend to the emptying of the sinks and cesspools attached to it; on the contrary, that duty ordinarily devolves upon the tenant, who is bound to see that the premises are not injured by any inattention to his duties in this respect; but I do mean to say, that modern improvements require appropriate rules; and as, in a tenement house, no occupant of a single room, renting direct from the landlord for a short and may be uncertain term, generally from month to month,

can be required to perform this duty, it follows of necessity that it must fall upon the landlord to attend to.

On the other hand, if, as the plaintiff's agent testified, the filth came from the adjoining premises, and as it is not contended it thus came through any fault, procurement or neglect of the defendant, it was equally an injury to the · building within the provision of the law referred to. It will probably be said that if this view be correct, a landlord may be left without remedy against the acts of those who covertly furnish his tenants with excuses for abandoning demised premises. I can only answer, that the statute is certainly extraordinary in its character, and may give rise to great abuses being practiced under it by unwilling tenants upon landowners; but it is our duty only to construe its provisions, and not speculate upon the injustice it may produce, leaving to future legislatures to remedy any of the evils which may spring from it.

Judgment reversed.