## McGlashan vs. Tallmadge.

Upon a letting of realty, lands or tenements, there is no implied warranty that they are fit for the use for which the lessee requires them.

The maxim of *caveat emptor* applies to the contract of hiring of real property, as it does to the transfer of all property, real, personal or mixed, with one or two recognized exceptions.

In the absence of any fraudulent representations or concealment by the lessor, as to the state and condition of the premises let and their fitness for the purpose for which they are hired, it is no defense to an action for the rent, that the premises were, and continued to be, unhealthy, noisome and offensive, and unsuitable for a dwelling. Bacon, J. dissented.

ACTION for rent upon a sealed agreement for leasing a dwelling house in the city of Syracuse, for one year ; the plaintiff averring in his complaint that the defendant "entered into the possession of the premises so leased to him as aforesaid." The defendant, in his answer, alleged that the plaintiff, at the time of the letting, fraudulently represented the house to be in good condition and fit for occupation for a family, &c., and that the same was not tenantable, &c. Another defense was that the premises, at the time of the letting, were and continued to be unhealthy, noisome and offensive, and unsuitable for a dwelling, &c. On the trial before the referee, evidence was given that the house was leased by an agent of the defendant, for him, after the agent had inspected and examined the premises, and that soon thereafter the defendant entered into the possession thereof. That for want of proper drainage the house became and continued to be unwholesome, noisome and offensive, and unfit for occupation as a dwelling. The referee gave judgment for the defendant, from which the plaintiff appealed.

*Smith & Markham,* for the appellant.

*Jas. Noxon,* for the respondent.

Allen, J. There was no evidence of fraudulent representations by the plaintiff, as to the state and condition of

the premises and their fitness for the purpose for which they were hired. And the evidence would not have justified a finding of a fraudulent concealment of their actual condition at the time of the letting. The referee rests his decision solely upon the ground that the house was not tenantable, and decides as matter of law that for that reason the defendant had the right to abandon the premises, and was not liable for the rent after the time of the surrender of the possession.

The earlier English cases, and especially *Smith* v. *Marrable*, (1 *Car. & Marsh.* 479 ; *S. C.*, 11 *M. & W.* 5,) seem to support the judgment of the referee. That case was distinguishable from this, in that it was to recover for the use and occupation of a furnished house, and the defense was that the furniture and not the house was unfit for use ; and this fact is referred to in subsequent actions as distinguishing it in principle from actions upon leases or for the use and occupation of realty alone. (*Hart* v. *Hindson*, 12 *M. & W.* 68. *Sutton* v. *Temple, Id.* 52. *Cleves* v. *Willoughby*, 7 *Hill*, 83.) It is not necessary to refer to the other cases relied upon by the counsel for the respondent, for the reason that they have been expressly overruled in England, and are not regarded as law, in this state. The cases are *Cowie* v. *Goodwin*, (9 *Car. & P.* 378 ;) *Edwards* v. *Ellington*, (*R. & M.* 268, *S. C.* 7 *D. & R.* 117 ;) *Collins* v. *Baum*, (1 *M. & R.* 112.) *Salisbury* v. *Marshall* (4 *Car. & P.* 65) was made to depend upon the form of the agreement. The judgment can only be sustained upon the ground that there is an implied warranty by the owner that the demised premises are suitable and proper for the purpose for which they are rented—that a tenement leased for a dwelling is suitable for that purpose. But the contrary of this is very well settled, by repeated adjudications in England as well as in this state. It is no answer to a demand for rent that the premises are not in a fit and proper state and condition for the purposes for which they are hired—as by reason of the buildings being destroyed by

McGlashan *v.* Tallmadge.

fire during the tenancy, or becoming untenantable by reason of a nuisance erected and existing without the fault or act of the landlord. (1 *Pars. on Cont.* 425. *Baker* v. *Holtzapffell*, 4 *Taunt.* 44. *Arden* v. *Pullen*, 10 *M. & W.* 321. *Izon* v. *Gorton*, 5 *N. C.* 501. *Gilhooly* v. *Washington*, 4 *Comst.* 217.) *Dyett* v. *Pendleton*, (8 *Cowen*, 727,) deciding that the grossly lewd and criminal conduct of the landlord in another part of the same dwelling, offensive to common decency and accompanied with riotous disturbances destroying the quiet occupation and beneficial enjoyment of the premises was a virtual eviction, and therefore a bar to an action for the rent, was said in *Ogilvie* v. *Hall* (5 *Hill*, 54) to be an extreme case. It may be sustained upon the ground that the wrongful act of the landlord prevented the beneficial occupation of the premises as a dwelling, and was therefore an eviction. But this carries the doctrine of eviction to its utmost verge. (*Per Savage, C. J. in Etheridge* v. *Osborn*, 12 *Wend.* 529.) Upon a letting of realty, lands or tenements, there is no implied warranty that they are fit for the use for which the lessee requires them. (*Arch. Land. and Ten.* 284.) The maxim of *caveat emptor* applies to the contract of hiring of real property, as it does to the transfer of all property, real, personal or mixed, with one or two recognized exceptions which do not reach this case. *Sutton* v. *Temple*, (12 *M. & W.* 52 ;) *Hart* v. *Hindson*, (*Id.* 68 ;) *Westlake* v. *De-Graw*, (25 *Wend.* 669 ;) *Cleves* v. *Willoughby*, (7 *Hill*, 83 ;) *Howard* v. *Doolittle*, (3 *Duer*, 464 ;) *Dutton* v. *Gerrish*, (9 *Cush.* 89 ;) *Foster* v. *Peyer*, (*Id.* 242 ;) and *Wells* v. *Castles*, (3 *Gray*, 323,) are to the point, and decisive.

The referee has not found that the plaintiff was guilty of any fraud, or that the nuisance was created by any wrongful act of the landlord; and as there was no implied warranty that the premises were or should continue to be tenantable, it follows that the defendant was liable upon his contract to pay the rent agreed upon. The action was upon the verbal agreement and not for use and occupation, if that would have

McGlashan *v.* Tallmadge.

made any difference. The agreement was valid and in force, and the plaintiff was entitled to a judgment for the rent reserved.

The judgment must be reversed, and a new trial granted; costs to abide the event.

MULLIN and MORGAN, Justices, concurred.

BACON, J. (dissenting.) Although it may be true that there is no implied warranty in the case of an actual lease, that the premises are or shall be put in good repair, yet I think it must be held that where premises occupied by a tenant are rendered uninhabitable by reason of a nuisance thereon which endangers health and life itself, the tenant will be warranted in quitting the premises and terminating the demise. Especially should this be so where the landlord has agreed to put the premises in repair, and they are found to be untenantable by the wrongful act or default of the lessor. Such is the principle laid down by Ch. J. Tindal, in *Izon* v. *Gorton*, (5 *Bing. N. R.* 501,) and it applies fairly to this case.

I know no just principle on which a tenant can be held to the performance of an agreement to continue a demise under circumstances which compel him to endure a continued and intolerable nuisance. (*See Pendleton* v. *Dyett, in error*, 8 *Cowen*, 727.) The judgment should, I think, be affirmed.

New trial granted.

[ONONDAGA GENERAL TERM, October 1, 1861. *Bacon, Allen, Mullin* and *Morgan*, Justices.]