## NEW YORK COMMON PLEAD.

### JAMES WALLACE agt. WHITMAN S. LENT.

When a *landlord* knows that a cause exists which renders his premises unfit for occupation, it is a wrongful act on his part amounting to fraud, to rent them without *giving notice* of their condition.

The *tenant* in such case, who is ignorant of such unfitness of the premises is not bound to pay any rent, if within a reasonable time after the discovery of the fraud, he repudiates the contract.

*New York General Term, July,* 1865.
DALY, BRADY *and* CARDOZO, *Judges.*
APPEAL from judgment of special term.

By the court, DALY, F. J. This was the case of a landlord's agent renting a dwelling house in the city of New York, to a tenant, without disclosing the fact, of which he was aware, that there was a deleterious stench in the house, proceeding from some unknown cause, which rendered it unfit for habitation. The tenant, ignorant of the circumstances, went into possession with his family, and in a very short time all the inmates of the house experienced the injurious effects of the stench. It was not merely offensive to the senses, but it produced sickness at the stomach, vomiting, loss of appetite, &c. The tenant did everything in his power to abate the nuisance, but without effect, and after continuing in the house for about a month, and after several consultations with the family physician, who was of opinion that the family could not live in the house without all becoming sick, he left it. The plaintiff has recovered in the court below for two months' rent, and I think erroneously.

It was held in *Sutton* agt. *Temple* (12 *Mees.* & *W.* 52), and in *Hart* agt. *Winslow* (*Id.* 68), overruling the previous cases of *Collins* agt. *Barrow* (1 *M.* & *Rob.* 112), and *Salsbury* agt. *Marshall* (4 *C.* & *P.* 65), that there is no implied

condition in an agreement for the hiring of a house that it is reasonably fit for habitation, and it was held in *West-lake* agt. *De Graw* (25 *Wend.* 669), that it was no answer to an action for the rent, that the tenant left the premises in consequence of a noxious and unhealthy smell arising from dead rats under the steps of the house, inasmuch as by the exercise of ordinary vigilance he could have ascertained, as the tenant who succeeded him did, the cause of the smell, and might have removed it.

The present case, however, is distinguishable from either of the preceding ones, in several particulars. The landlord's agent admitted. that he knew before he rented the premises to the defendant that there was an offensive stench in the house, the cause of which had not been discovered, but which he supposed arose from a sewer that was under the house. It was, in the language of the physician, a dense, bad smell, as if it came from a vault; and that it was highly injurious to health, appeared in the fact that when the inmates of the house arose every morning they had sickness at the stomach, accompanied with a foul tongue and loss of appetite, and some of them were taken with vomiting. The previous tenant had left the premises before the expiration of his term, and the agent, after several attempts to evade the inquiry, admitted that this tenant may have said to him that he left the house in consequence of the smell. He also admitted that complaints had been previously made respecting the stench, and that in consequence of them he made an application to the health warden.

To let the house to the defendant, concealing so material a matter as this was a fraud, it was something which the defendant could not have anticipated, and of which he had a right to be advised, as it affected the beneficial enjoyment of the premises. The agent knew that the house was not fit for habitation, but the tenant did not, nor could he have discovered the cause which made it so, by any ordinary

examination of the premises. No contract is implied that a house is fit for habitation for the reason that the tenant can examine it, and the landlord may know no more respecting it than it is in the power of the tenant to discover for himself. But when the landlord knows that a cause exists which renders the house unfit for occupation, it is a wrongful act on his part to rent it without notice of its condition. It is procuring an innocent tenant to enter into a contract for the payment of rent during a specified period, for the occupation of a house which the landlord knows that the tenant will either have to abandon, or if he remains in it, must do so to the detriment of the health of himself and his family. If the defendant had been advised of the existence of this stench, it may fairly be presumed that he would either have declined to rent the house, or that he would have made some condition entitling him to leave if he found it undesirable ; and if, after discovering and experiencing its injurious effects, he is compelled to quit the house, it would be permitting the landlord to take advantage of his own wrong to allow him to enforce the contract for the payment of the rent. In *Sutton* agt. *Temple*, the court adverted to the circumstance that it was not suggested that the plaintiff had the least knowledge when she let the premises of the existence of the poisonous substance upon the land which proved injurious to the plaintiff's cattle ; and in *Westlake* agt. *De Graw*, the verdict of the jury was regarded as having negatived any presumption of fraud. But in the present case it was abundantly shown, even by the agent's admission, that he knew of the existence of the stench, and it was by the unconscientious withholding of that material fact that the defendant was entrapped into a contract to pay rent for a house for a year which he could not occupy.

Even where fraud has been practiced, a tenant, if he continues to occupy the house, must pay rent for it, but after the discovery of the fraud, he is entitled to a reasonable

time within which to repudiate the contract.    In this case, the defendant continued in occupation about a month, but he did so under the assurance of the agent that the cause of the complaint would be removed.    An attempt was made, but it was not removed, and the defendant left about the 2d of June, by the advice of his physician.    His continuance, therefore, during this period, was not of such a nature as to amount to an adoption of the contract, or to make him liable for the payment of rent for the period which he actually occupied.

The judgment should be reversed.