Hawes, J.
From the record before us it appears, that the defendant leased of the plaintiff certain premises in the City of New York, known as No. 351 Fifth avenue, under a written indenture of lease, dated April 13, 1877, and that said premises at the time Of said lease were partially furnished. By this lease, which contained all the provisions of the letting, it was stipulated that the party of the first part should, “at the commencement of the lease, put the plumbing, range and furnace in good order and repair, and during the continuance of the lease the party of the second part should keep the said premises, plumbing, range, furnace, &c., in good order and repair at his own cost.” The lease was to begin May 1,1877, and to continue for three years, to wit, to May 1,1880. *443 The defendant entered into occupation on May 1, 1877, and remained in possession “ until the expiration of the lease.” This suit is brought to recover the last quarter’s rent, the previous rent having been paid in accordance with the terms of the lease.
The defendant by way of defense alleges a breach of the covenant to repair on the part of the landlord, and that by reason of such breach the sewer gas escaped and the house was unhealthy, malarious and uninhabitable, and that the defendant and his family became sick, and that he thereby suffered damage in the sum of $9,000. Defendant also alleges that he expended the sum of $44 in making certain necessary repairs to the furnace.
The court below allowed the proof as to the latter expenditure, but declined to admit proof of special damage arising from defective plumbing and consequent escape of sewer gas which caused sickness to defendant and his family. The ruling of the court below in this regard is the substantial question here presented for our consideration, and, under all the circumstances of the case, we think the ruling correct, and the judgment should be affirmed.
It will be noticed, preliminarily, that there was no eviction, and the questions frequently arising in regard to the untenantableness of the premises do not appear, as they were admittedly tenantable from the fact that defendant occupied them, and such occupancy concludes him (1 Rawle on Cov. 144; Egerton v. Page, 20 N. Y. 281). In the late case of Bond v. Lawton (90 N. Y. 295), the defendant claimed as part of his damages his necessary absence from the premises, owing to a disturbance by plaintiff of peaceable possession. The court held that the covenant of quiet enjoyment was implied, but that it extended only to possession, and that as defendant had remained in possession he had no ground of counter-claim. The *444 distinction between that case and the one at bar is, of course, apparent, but I cite it only as 'illustrating one phase- of the present case.
It will be noticed, in the first place, that the covenant on the part of the landlord was to put the plumbing, furnace and range in good repair at the commencement of the lease, and that he did not undertake to keep them in repair. The obligations of the plaintiff and the rights of the defendant became fixed at that moment, and it was at that moment that the defendant was at liberty to affirm or rescind the contract, and there did not exist after' that time a continuing liability on the part of the plaintiff. It was also at that moment that the defendant’s right of action accrued, and he was bound .to make his election. The covenant to put in repair admits of but one breach undone action (Coward v. Gregory, 2 L. R. C. P. 153). Assuming that the covenant on the part of the plaintiff was all that defendant can claim for it, and that it was a condition precedent, then the hiring would, in one sense, be a conditional one, and defendant was at liberty to withdraw, or move in and make the repairs himself. He did the latter, and I am at a loss to see how his damages can exceed such expenditure, even if they can be allowed, in view of the fact that he consented to take the premises as they were at the commencement of the lease ; and it might” well be claimed that he waived the .condition. Be that as it may, it is quite clear that the continued possession of the premises by defendant, even though he complained of their condition, was a waiver of any claim for damages arising from the failure to repair (Arnold v. Clark, 45 Super. Ct. [J. & S.] 252; Hunt v. Silk, 5 East, 449; Parker v. Palmer, 4 B. & Ald. 387 ; Street v. Bely, 2 Id. 456); and that in any event he could only recover the actual amount laid out by him (Darwin v. Potter, 5 Den. 306; Williams v. Williams, 9 L. R. C. P. 659).
*445 I am, however, led to infer from the offers of proof which appear in the case, that while defendant admits the general propositions of law affecting the duty of a tenant in the hiring of a house, and that he takes it at his peril, yet he deems the plumbing exceptional, and that there exists an implied knowledge on the part of the landlord of a defect of such a character as to take the case out of the accepted rule of the law. In reference to these offers to prove, it may be said, in passing, that there was no allegation in the answer which would warrant the proof, but I will assume that the pleadings are amendable in that regard, and it will be observed that the fourth offer to prove knowledge on part of plaintiff of the defective condition, would be construed and limited by the third offer, which disclaimed any blame for concealment, and described it as arising from “ the natural manner of the construction of the house,” and that therefore the defendant was unable to examine it. In other words, the concealment was such as exists in all houses which have sewerage connections, and the knowledge is the knowledge which any person can obtain by a proper examination. There could, therefore, have been no such a deception as to impose upon the plaintiff the obligation of a warranty ; neither would it create such a condition as would justify an action for deceit, even though the plaintiff had made untrue representations in regard to the character of the premises (Schermerhorn v. Guoge, 13 Abb. Pr. 315).
That there may exist such a deception, either by suppression of the truth or a suggestion of falsehood, is not questioned, as when a landlord lets premises which are infected by a contagious disease (Minor v. Sharon, 112 Mass. 477 ; Cesar v. Karutz, 60 N. Y. 229), or the presence of a stench, proceeding from an unknown cause, which make the premises untenantable *446 (Wallace v. Lent, 1 Daly, 481), or the fact that the house had been previously used as a house of prostitution (Rhinelander v. Seaman),* but in view of the pleadings and the proof, and the express disclaimer of any blameable or wrongful concealment, it cannot be claimed that the case at bar could be brought within this category.
Fraud is expressly waived in the third offer of proof, and plaintiff is chargeable only propter revi ipsam. Neither is it claimed that the repairs were done negligently, which might possibly bring it within the ruling in Walker v. Swayzee (3 Abb. Pr. 136, 138), inasmuch as the defendant alleges that the plaintiff did not do or attempt to do the repairs as agreed upon in the lease. The question therefore resolves itself into the ordinary one of the liability of a landlord, who lets a furnished or partly furnished house, with defective plumbing, and so defective as to allow the escape of sewer gas, which is recognized as unhealthy, and oftentimes deadly in its effects ; and also the rights of a tenant who leases a house built in the ordinary manner under the express or implied covenant to keep it in repair.
This same question was substantially presented to this court in the case of Coulson v. Whiting,† argued at this term, and it may be said that no term passes without its presentation in one form or another, and that it may be added that the late cases affecting this question are far from being uniform or harmonious.
The residents of all towns are in a state of alarm from actual or supposed malaria which all sewers generate, and there is probably no house in this city which is free from occasional smells that such a system has evolved. This may arise from many causes, such as *447 want of attention on the part of the tenant or unscientific plumbing, although in general it may be said that it exists in the very nature of things, and if a tenant wants all the “ modern conveniences” he must put up with the modern smells.
It seems like stating a truism to declare that a person hires a house as a buyer purchases goods—the law compels him to inspect them and satisfy himself of their character, and he buys for better or for worse (Jones v. Just, L. J. 37 Q. B. 89 ; Keates v. Earl Cadogan, 10 Com. B. 591), and if a tenant, for purposes of economy or otherwise, - elects to hire a tumbledown house he does so at his peril, and he cannot be heard to complain if it falls altogether. It is his duty to make all necéssary examinations, and having hired it he becomes liable for the rent for the full term of the lease. The common law was inexorable in this regard and gave the tenant no relief and compelled him to pay, if the premises became wholly untenantable from any cause whatever. If ■ the house was burned down or was blown down, he was still liable in the absence of an express covenant in his behalf. The statute of 1860* however, has modified this apparent injustice of the common law, and relieves the tenant from such rent in cases of destruction or injury by the elements so that it becomes untenantable ; but it is well settled that the provisions of the law of 1860 go no further than to furnish a remedy for the manifest hardships of the common law, and that a definite meaning must be given to the words “ destroyed” and “ injured” (Suydam v. Jackson, 54 N. Y. 450). “The former,” says Judge Earl, “ has reference to a sudden or total destruction by the elements acting with unusual power, or by human agency ; the latter to a case of injury to the premises short of a total destruction occasioned in *448 the same way. If the legislature had intended to provide that the tenant should cease to be liable for rent when the premises .from any cause become so damaged or out of repair as to be untenantable, it would have been easy to have expressed the intent in apt and proper language.” This would seem to put an end to all discussion as to the effect of the statute of 1860 upon this class of cases.
Aside, then, from this statute, which embraces few and exceptional cases, it is quite clear that a tenant who hires a house does so at his peril, and that there is no implied warranty that it is fit for the purposes designed or is even habitable.
It would seem, however, from the number of cases which come before the court for determination, that plumbing is deemed exceptional in its character. The roof may leak, the plastering give way, the doors and windows be broken, and ocher misfortunes incident to housekeeping may occur, and no claim is made that an eviction has been established or a right of action has accrued against the landlord for the tenant’s ill health, but if a pipe becomes filled up (by neglect or otherwise), or the solder becomes loosened or the pipe itself becomes deranged, or the main séwer is in such condition as to empty the traps, the tenant for some reáson claims that a different rule applies. Now, if a tenant elects to hire a house which’ empties into a sewer, with ramifications throughout his sleeping apartments, he does so with all the liabilities that such an election ■ engenders, and with full knowlege that no plumber has yet been able to keep out the gas or prevent the smells. The repairs of a sewer pipe are no different from the repair of a window or a door, and the distinguishing injury arising from such neglect is not only incidental and remote, but as matter of fact, is the result of the tenant’s own election. He hired the premises with full knowledge of these connections, and the landlord *449 is not chargeable with such consequential injuries as may arise from any defect that time and use produce.
Under such circumstances, smells, and even sickness, are not only not extraordinary but are inevitable, and. I fail to see how this furnishes any ground of action against the landlord. The party who hires has an opportunity to examine the house, and he can examine the plumbing as well as the walls in so far as it can be examined at all, and he has possibly as much knowledge as the lessor, for there is no implied covenant as to plumbing any more than of plastering or painting or tinning. In one sense it may be said, that it is concealed and the tenant could not tell what he was hiring, but the same may be said of nearly all the carpenter work, the brick work, and nearly every portion of a building of a substantial character. The charge of concealment and deception in this class of cases is undoubtedly an outgrowth of anger which has its source from the painful results of.such defects, but the law in its present state furnishes no remedy to the tenant that I know of, and its rests with the legislature to make landlords and builders liable in such cases ; for the common law throws the responsibility upon the tenant, and I know of no provision which exempts the plumbing or the sewer fixtures from these well settled provisions. As in Foster v. Peyser (63 Mass. 242), where the lease declared that the house was in perfect order, and a defective drain which produced a disagreeable stench was subsequently discovered, it was held that the lease had reference only to the condition of the house as an edifice, and not to the present and future purity of the air within it. As matter of fact, the condition of pipes and of plumbing in a house are easily determined, and it is not claimed in the case at bar that there existed any secret or hidden source of danger to the health, except such as would naturally arise from unrepaired pipes. The mere fact that these pipes *450 are connected with an unhealthy sewer which causes fetid odors, in no sense creates greater liability on the part of the plaintiff than if there were no such connections and no such odors. Neither does that fact establish higher rights in favor of the tenant in cases like the present, where the party hires with full opportunity to examine the premises and with knowledge that the connecting pipes opened into the sewer. That there exists any implied warranty on the part of a landlord in renting a house that sewer gas shall not escape and make the house unhealthy, is wholly wanting in precedent and in analogy, and, as stated above, there is no implied warranty in any lease that it is fit for the use to which it is designed by the tenant, or even that a dwelling house is habitable (Hart v. Windsor, 12 M. & W. 68 ; Sutton v. Temple, Id. 52; Heard v. Chapman, 15 L. T. 437 ; Cleaves v. Willoughby, 7 Hill, 83; Surplice v. Farnsworth, 8 Scott N. R. 307 ; Francis v. Cockerill, 5 L. R., Q. B. 501; Jones v. Just, 37 L. J., Q. B. 89; Searle v. Laverick, 9 L. R., Q. B. 43; West Lake v. DeGraw, 25 Wend. 669; Dutton v. Gerrish, 63 Mass. 89; Foster v. Peyser, 63 Mass. 242 ; McGlashan v. Tallmadge, 37 Barb. 313; Sutphen v. Seebass, Common Pleas, Gen. Term, May 18, 1883; Truesdell v. Booth, 4 Hun, 100; Nemelty v. Naylor, 18 Alb. L. J. 498 ; Laughlin v. Kief, 15 Id. 255 ; Krueger v. Farrant, 14 Reporter, 660; Wilkinson v. Clausen, 13 Id. 756 ; Allegeant v. Smart, 11 Id. 784).
It is claimed by defendant, however, that, admitting the rule of caveat emptor to prevail in cases of ordinary leases of real estate, the rule is different in the case of a furnished house, and he relies upon the case of Smith v. Marrable (11 M. & W. 5). This case and kindred English cases are frequently referred to as establishing the law that the landlord has given an implied warranty that all houses which are leased with furniture are habitable, and free from smells and *451 defective drainage. I have been unable to find any American decision directly on this point, and in so far as the case of Smith v. Marrable is referred to at all, it is mentioned as being doubtful law (see Mc Adam's L. & T. 40 ; Taylor's L. & T. 331; Washb. on R. P. 544 ; Howard v. Doolittle, 3 Duer, 464; Smith's L. & T 262). It must be further said that it has never been overruled in this country, however much it may have been doubted; neither has it been overruled in England, although Judge Earle, speaking of this case in Heard v. Chapman (supra), says that the famous case as to bugs has been overruled, and refers to Sutton v. Temple and Hart v. Windsor. In Hart v. Windsor (supra), and Sutton v. Temple (supra), the same judges who decided Smith v. Marrable merely modified their general deductions, but in so far as it related to the question of furniture it was not only not reversed, but distinctly affirmed. It overruled the conclusion there reached only so far as it related to real estate as such. The same may be said of Surplice v. Farnsworth (supra). I have been referred to no case in England which overrules the distinctive question raised in Smith v. Marrable, but on the contrary, the late case of Wilson v. Fitch—Hatton, (2 L. R. Exch. Div. 336) clearly affirms the case of Smith 0. Marrable, and the opinion of Chief Barron Kelly in that case^compels an unwilling assent to the conclusion reached. While the case of Smith 0. Marrable is admitted to be exceptional, it is none the less, in my opinion, law in England, and I do not think it so very exceptional as may be supposed.
It becomes, therefore, proper to consider what was actually decided in that case, and the facts which have assumedly created such an exception to well established law. If exceptional, the effect of the ruling should not only be carefully scrutinized but should be limited to the particular case for which this principle *452 of law is invoked. It appears that Smith rented to Sir Thomas Marrable a fully furnished house at Brighton, a well-known watering place in England, “atthe rent of eight guineas per week, for five or six weeks, at the option of the said Sir Thomas Marrable.” The defendant’s family moved in at once, but found it so infested with bugs that they were compelled to leave and did leave. Action was brought for rent. The character of defendant’s plea is not set forth in the report, but plaintiff’ s counsel, on motion for a new trial, charges that the plea in truth was fraud, expressed or implied on the part of plaintiff in concealing from the defendant the fact of the existence of the nuisance. The case of Wilson v. Fitch—Hatton, (supra,) was similar in character, being the rental of a furnished house at an English watering place for the period of three months. When the defendant move'd in, she discovered noisome odors in the house, and under the rooms in the basement she discovered filthy deposits which were concealed from the defendant. Now, in both of these cases it could be well held that they constituted no exception to the rule, but would come within the case of Wallace v. Lent (1 Daly, 481); and the other cases referred to above when the plea of eviction could be maintained on the ground of fraudulent concealment on the part of the landlord. I think, however’, that the peculiar character of these cases take them substantially out of the category of cases of real estate, and would resemble the case of fully furnished rooms in a' hotel, which are presumably fit for immediate occupation.
The remarks of Lord Abinger in Sutton v.Temple (12 M. & W. 52), in criticising the decision of Smith v. Marrable, in which he participated, clearly note the distinction. They were substantially furnished rooms in a lodging house, rented for a particular time, and in such a case there is an implication of warranty that they are fit *453 for such a purpose. The mere fact that a house has furniture in it, is not the determining element, although it is one of the elements which seemingly take Smith v. Marrable out of the category of determined cases. And it is proper that I should say, in passing, that I do not concur in the views sometimes expressed (as in McGlesham v. Tallmadge, supra), that the rule in Smith v. Marrable might be sustained where the defect, as in that case, existed only in the furniture. This view is expressly disclaimed in Wilson v. Fitch—Hatton (supra), and very justly so. The real question there decided is much broader and there the true ground of the decision is much more logical, if it can be maintained at all. The rental is of a furnished house for a short period, payable weekly, and it clearly anticipates immediate habitation, and also anticipates not only the use of the realty, but all the accommodations afforded by the use of the house and all its appurtenances during a brief period. Domestic provisions furnished by a family for immediate consumption are impliedly warranted, and yet it is well known that the rule of caveat emptor prevails in the purchase and sale of goods in general; so of medicines required in an emergency for a particular purpose.
The same principle which makes these purchases exceptional, prevails in the above cases. They are both of them instances of renting a furnished house or furnished rooms for a particular season of the year, at a watering-place, where under the English system of living, everything is furnished, and one moves in prepared to commence housekeeping.at once, and such a house may be better likened to an American hotel or furnished rooms in a lodging house, or possibly a modern flat, rented for temporary use. The circumstances under which such a letting occurs establishes its exceptional character. It is tantamount under such circumstances to a representation of its fitness for *454 immediate use. This view seems to run through all the English cases where Smith v. Marrable, Edwards v. Ethington and Collins v. Brown are favorably mentioned, and although it does not seem very satisfactory, it so sufficiently limits its effect as to relieve the ordinary cases from any embarrassment. Judge Metcalf, however, in Foster v. Peyser (supra), declares that in all these apparently exceptional cases there was either fraudulent description of the demised premises or they became uninhabitable by the wrongful act of the lessor. Whichever view may be taken, it is quite clear that they have not established any new principle of law, Or modified the rights and duties of landlord and tenant. The reason of the rule was sufficiently clear, and the rule as thus applied would fail wherever the reason failed. But in any event, the ruling in Smith v. Marrable could not be invoked in behalf of the case at bar as it is wanting in every element which distinguishes that case either from the acts of the landlord or .the peculiar, circumstances of the case. It incidentally appears in the lease that there was some furniture which the plaintiff permitted to remain, but in every other respect there is no similarity in the cases, and if Smith v. Marrable should be assumed to be sound in law, it would have no application whatever to the case at bar, for the reasons above stated, as it could not be brought within any of the limitations which make it exceptional. I am, therefore, of the opinion that the defendant in this action had no ground of action against the plaintiff by way of counter-claim ; that he affirmed the contract by occupancy .; and that, if a counterclaim could be technically maintained, he has no cause of action by reason of the condition of the premises or the acts of the landlord.
Hall, J., concurred; Shea, Ch. J., dissented.
Judgment affirmed, with costs.
*455 In Rhinelander v. Seaman (Special Term, 1877):—Held, that the landlord’s fraudulent concealment of the fact that the premises had been used as a house of prostitution, was a defense to the tenant when sued for rent, he having been deceived thereby to his damage.
Demurrer to answer.
The action was for rent under a lease for three years.
The defendant answered that the premises had been previously used as a house of prostitution, which use was known to the landlord, and not disclosed to the tenant. A counter-claim for $1,000 damages was also set up.
11. H Anderson, for plaintiff.
Joseph D. Hay, for defendant.
Van Vorst, J.
The defendant’s answer, to which a demurrer is interposed by the plaintiff, distinctly alleges that the infamous purposes to which the premises had been devoted before they were leased to him, were well known to the plaintiff and his agent, ,mti that they fraudulently, and with intent to deceive and injure Mm, wholly omitted to inform him thereof, and concealed such knowledge from him for the purpose of inducing him to hire the premises, and that, by means of such fraudulent concealment, the defendant hired the premises and accepted, the lease.
The annoyances suffered by the defendant are distinctly disclosed in the answer, and were of a character to justify him in abandoning the premises, which he did. He gave up and surrendered the possession of the same, as he alleges, to the plaintiff. The damage and its nature are stated in the defendant’s answer, for which he seeks compensation in the action. I think the defendant’s answer discloses a legal defense to the plaintiff’s claim for rent. With great respect for the court deciding it, I cannot think that Meeks v. Bowerman (1 Daly, 99), is a correct exposition of the law on the subject. We have here clearly averred deceit and fraudulent concealment practiced to the defendant’s injury and damages. It must be that such acts and concealments on the landlord’s part should prevent a recovery. Staples v. Anderson, 3 Robertson, 327, is indirectly opposed to Meeks v. Bowerman, and announces a better doctrine, more • in. accord with reason and justice. See also Wallace v. Lent, 1 Daly, 481; Caesar v. Karitz, 60 N. Y. 229.
The demurrer is overruled, with privilege to the plaintiff to reply on the usual terms.

 See page 455, post, where tills case is reported,

 Not yet reported.

 L. 1860, p. 592, c. 345.