WILLIAM TUNBRIDGE, Respondent, *v.* CASSIUS H. READ *et al.*, Appellant.

*Court of Appeals, April* 17, 1888.

Reversing same case, 38 Hun, 643, Mem.

1. *Question of law.*—Where, in an action to recover rent alleged to be due under a lease, the evidence as to the state in which the premises were left by the lessor is so far uncontradicted as to have made it the duty of the court to have decided as matter of law that the lessor had not, in that respect, complied with the covenants of the lease, it is error to submit to the jury the question as to whether there had been a substantial compliance with such covenants.

2. *Same. Submission.*—Where several questions are submitted to the jury, upon any one of which the jury can find for the plaintiff, and one of which is improperly submitted, and which the court ought to decide, as matter of law, in favor of defendant, a general verdict in favor of the plaintiff may be based upon this erroneous finding of the jury.

3. *Lease.*—A covenant in the lease construed.

4. *Agency. Possession.*—The evidence upon the questions of agency and possession commented upon, and held exceedingly slight.

Action to recover rent alleged to be due under a lease from plaintiff to defendants of certain premises in the city of New York.

Appeal from a judgment of the general term of the supreme court, affirming a judgment in favor of the plaintiff entered upon a verdict, and an order denying a motion for a new trial.

*Christopher Fine*, for appellant.

*Brewster Kissam*, for respondent.

Peckham, J.—The plaintiff, the lessor, covenanted, in the lease to lease a passageway or thoroughfare seven feet wide from the Beaver street entrance, to be used in common as an entrance to and from the building, and to be lighted by the lessor at his own expense. He was also to build two water closets and urinals in the rear part of the basement.

The evidence is substantially uncontradicted that no such thoroughfare or passageway was made. New street and Beaver street ran at right angles to each other, and the plaintiff built the passageway from Beaver street to the rear part of the basement where the water closets were; but from that point the passageway, which turned at a right angle in order to reach New street, was a dark room filled with engineer's supplies and into which a door opened which was kept closed, though not fastened, and this dark passage was in no sense a thoroughfare or passageway to an entrance to be used by people frequenting the basement. In no fair

sense could it be said to be a fulfillment of plaintiff's covenant in regard to a thoroughfare. It was nothing of the kind. As the plaintiff left the basement there was substantially but one entrance to it, and that was from the Beaver street side. From the New street side there was a step ladder running up the side of the easterly wall of the building, the steps being two feet seven and a half inches wide, built in the area and landing on a platform with an iron gate at the top. To gain an entrance from the New street side one must descend this ladder, having first opened the gate, and at the bottom there was a door which gave entrance to this dark passage, filled as I have said with engine supplies, and which was the engineer's room, and through this passage which was so dark that one could not see his hand before him, the passageway was reached which led to the Beaver street entrance. The architect testified, and he was not contradicted, that the entrance from New street was nothing but a ladder or a passage scuttle for a fireman or engineer, but not for pedestrians. He also said there was no difficulty in providing an entrance in New street similar to that in Beaver street. The water closets were not placed in the rear part of the basement but over thirty feet from the rear, and only about seventy-five feet from one end of the Beaver street entrance.

This basement, or that part which was let, was to be used for offices as stated in the lease, and it is obvious that the provision for a thoroughfare from one entrance to the other on the two different streets was a most important one, being of the very substance of the lease, and which, if not complied with, would absolve the defendants, the lessees, from all obligations to take possession of the premises, or to pay rent in case of not taking possession.

It was not a question to be submitted to the jury as to whether there had been a substantial compliance with the covenants of the lease. The evidence as to the state in which the premises were left by the lessor is so far uncon-

tradicted as to have made it the duty of the court to have decided as matter of law that the lessor had not, in that respect, complied with the covenants of the lease. Instead of so doing, the court substantially left to the jury the question, as he said : " You must find either that he took possession or that there was a substantial performance of the agreement," and to that charge the counsel for the defendant excepted.

It is true the court said that the lessor was bound to make a substantial performance of his contract, and he added : " If he submitted the manner in which he was doing it to either of the defendants or their agent, and they approved of it, that would tend to operate as a waiver of the contract after it was carried out in such particulars as had been assented to by either of the defendants or their agent." He also left the question to the jury whether the defendants, or their agent, having power so to do, did accept possession of the premises knowing of their defects, and if so, then the defendants were liable.

There were thus three questions submitted to them, upon any one of which the jury could find for the plaintiff. As the case was submitted to them they might find that plaintiff had substantially performed the covenants of the lease ; or that the defendants had approved of the manner in which he performed the covenants, and had waived their strict performance ; or that notwithstanding the failure to substantially comply, and notwithstanding there was no waiver during the progress of the work, the defendants or their agents had yet, with knowledge, taken possession of the premises at the commencement of the lease.

There was a general verdict for the plaintiff, and who can say that the jury did not come to the conclusion that there had been a substantial compliance with the covenants made by the plaintiff in the lease ? And yet as matter of law and upon the whole evidence in the case we say there was no such compliance. Yet the verdict may have been based upon this erroneous finding by the jury.

The evidence in regard to accepting possession is, also, exceedingly slight. That the defendants, themselves, ever took possession, knowing the condition of the premises, can scarcely be pretended. The chief claim is that possession was given to and accepted by an agent of the defendants, evidenced by the receipt of some keys and by the putting out of a sign, "To let," by the agent who was endeavoring to sub-let the basement. That he had the least authority to receive possession of the premises is emphatically denied by the defendants and is not claimed by the alleged agent. The authority rests upon alleged declarations made by one of the defendants to the plaintiff and proved by him. In his evidence the plaintiff gives but two interviews that he had with either of the defendants regarding the leased premises. The agent into whose possession he claims to have delivered the premises, was primarily his own for the purpose of renting the whole building and of collecting the rents when the building was rented. He drew the lease in question and was paid by the plaintiff therefor. Of the two interviews which plaintiff says he had with one of the defendants, the first occurred just prior to the signing of the lease, and the other a short time after November 1, 1883, the time fixed by the lease for its commencement. The references made by the defendant in his first conversation with plaintiff in which the plaintiff says the defendant Stokes told him that McMahone would act for him (defendant), in the matter, and whatever arrangements the plaintiff came to with McMahone, would be satisfactory to the defendant, plainly referred to the manner of making the alterations contemplated as to the partitions; where they were to be placed, their height, character, etc. A reading of the plaintiff's evidence leaves no doubt on that question.

The next interview was on the premises and plaintiff says defendant Stokes then remarked: "McMahone tells me he has had several parties to see him about renting the

place. I see he has got the sign up." So much as to the authority of McMahone to receive or take possession for the defendants.

The delivery of possession to the agent thus authorized, consisted; as plaintiff says, in leaving some keys to the office doors, in the office of McMahone, during his absence, and telling him afterwards that he had done so. He also says he told Stokes he had left the keys with McMahone, and Stokes said it was all right. When plaintiff saw McMahone after he had left the keys in his office, and told him he had done so, the plaintiff said nothing about Stokes or Read, in connection with the keys, nor did he state why he left the keys with McMahone. He does not claim that he told Stokes why, or for what purpose, he had left the keys with McMahone; yet, substantially, it is upon this evidence that the plaintiff founds his claim of a delivery of possession of the premises to, and an acceptance by, the defendants through their agent.

We think this is exceedingly slight evidence of authority' to receive possession or of any taking of possession by the agent of defendants. This assumed agent was the agent of the plaintiff confessedly to obtain tenants and to collect rents, and everything he did was compatible with his character as plaintiff's agent.

While not deciding absolutely that there was no evidence upon the question of McMahone's authority, we do say that it was so exceedingly slight as to make it all the more important in presenting the case to the jury for the learned judge to let them know clearly just what points they could take into consideration, and the submission to them of a question which should have been decided by the court, we are the more ready to condemn because of the very slight character of the evidence on the question of possession.

Upon the question argued here and raised in the trial court, as to the proper tribunal for the construction of the lease, whether by the court, or on account of its alleged am-

biguity, by the jury, we think it was for the court to deter-
mine it. We are of the opinion that the lease did not grant
the whole of the basement, but only eighty feet from front
to rear. We have looked at the cases cited by the learned
counsel for appellant, and are convinced that they have no
application to a case like this.

But for the reasons above stated, we think the judgment
appealed from should be reversed, and a new trial granted,
costs to abide event.

RUGER, Ch. J. concurs in result; DANFORTH and FINCH,
JJ. concur; EARL, J. reads for affirmance; ANDREWS, J.
concurs.

EARL, J. (dissenting).—The plaintiff brought this action
to recover for one-quarter's rent of the basement of a build-
ing, known as No. 9 Beaver street, in the city of New York.

On the 14th day of August, 1883, the defendants entered
into a written lease with the plaintiff, whereby they leased
the basement from him for a term of five years from the
first day of November thereafter, at the annual rent of
$4,000, payable quarterly. The premises demised are de-
scribed in the lease as " the basement in the building
known as and by the number nine (9) Beaver street in the
city of New York to be used as offices, said basement being
about eighty feet in depth, by the full width of the build-
ing, with the improvements to be made by the lessor at his
own expense as hereinafter mentioned ; " and the lessor
agreed before the commencement of the term to build two
or more partitions in the basement dividing the same into
three apartments, each to be fitted up with suitable gas fix-
tures and wash-hand basins, to warm the apartments with
steam heat during the term of the lease, to have the rooms
connecting by doors if so required by the lessees ; to build
two water closets and two urinals in the rear part of the
basement; to build a wide iron stairway leading to the

front part of the basement on Beaver street side; to erect a wood and glass partition from the Beaver street front of the basement to the rear part of the building, and extending to the basement entrance on New street, leaving a passageway or thoroughfare seven feet wide from the Beaver street entrance to the New street entrance, the passageway to be used in common as an entrance to and from the building; and to be lighted by the party of the first part at his own expense.

At the date of the lease the building was in process of construction. It was bounded on the south by Beaver street and on the east by New street. On the west side, from south to north, it was 115 feet six inches deep, and on the east side 102 feet seven inches deep.

The defendants claim that the plaintiff did not fit up the basement according to the agreement, and never gave or offered to give them possession of the demised premises, and that they never took possession; and that therefore they are not liable to pay the rent. They contend that they were entitled, under the lease, to the whole basement, excepting the passageway seven feet wide, and that the plaintiff fitted it up for them only to about the depth of eighty feet and reserved the balance for himself, which he occupied and possessed for his own purposes. They also claimed that he did not build the passageway seven feet wide from the Beaver street entrance to the New street entrance, as he had covenanted to do in the lease.

We do not find that any errors were committed by the trial judge in the reception or rejection of evidence. He received all the competent evidence bearing upon the issues offered by either party, and received no incompetent evidence which was objected to. He submitted the case to the jury for them to determine upon the evidence whether the defendants had taken possession of the premises under the lease, and charged that if they had the plaintiff was entitled to recover although he had not completed or fin-

ished the basement in accordance with the lease ; but that if they had not, then the plaintiff was not entitled to re- cover unless he had finished and completed the basement in accordance with the lease. He also submitted to the jury the question of the construction of the lease, leaving it to them to determine whether the construction claimed by the plaintiff or that claimed by the defendants was the correct one.

We are of opinion that the court should have construed the lease as a question of law, and should not have left its construction to the jury. It is a general rule of law that written instruments are to be construed as matter of law by the court, and this case is not brought within any of the exceptions to that rule. Here there is no latent ambiguity, and there are no technical terms to be explained. But no harm was done to the defendants in submitting the con- struction and meaning of the lease to the jury, as we are of opinion that it was the duty of the court to construe it according to the contention of the plaintiff.

For the purpose of construing the lease, and placing the court in the same light which surrounded the parties, it had the right to consider all the facts existing at the time of its execution, and the circumstances attending the same. The subject of the lease was the basement of a building which was to be seven stories high, and it is not to be supposed that the plaintiff intended to deprive himself entirely of the ordinary use of a basement for an engine, elevator, coal bin, and such other appliances and arrangements as are usually placed in the basement of such a building and are necessary to its convenient and proper use and occupation. If he had intended to rent the whole basement to the de- fendants, with the exception of the passageway it would have been easy to describe it simply as the basement, or the whole basement of the building. Instead of that, with a perfect knowledge of the depth of the building, the base- ment room rented is described in the lease as being about

eighty feet deep, and the full width of the building, thus leaving a large space in the rear not included in the dimensions given. Then, too, it is quite significant that the passageway through the building was to be for the common use of both the lessor and the lessees. It is difficult to perceive what use the lessor was to have for it if he was to have no right whatever in the basement.

It cannot be supposed that there was any mistake in describing the depth of the basement intended to be rented, as a diagram of it was present at the time the lease was drafted.

The basement rented was the rentable portion thereof, and that was present in the minds of the parties as the basement. The portion rented was to be divided into three apartments, connected by doors, and they were to be used as offices. These apartments were exhibited on the diagram present when the lease was drawn and they clearly constituted the basement demised, nothing being said in the lease about any other rooms or any other portion of the basement.

The plaintiff was, therefore, right in his contention that the defendants leased only that portion of the basement extending from Beaver street to a depth of about eighty feet.

The passageway seems to have been constructed in substantial compliance with the terms of the lease. It was to be seven feet wide, with a wide iron stairway leading to the front of the basement, on the Beaver street side. That stairway was constructed. There is no provision in the lease for any stairway on the New street side of the basement, but the passageway or thoroughfare was to extend from the Beaver street entrance to the New street entrance, which means the New street entrance of the basement. Such passageway as that we understand was constructed, or at least the jury could have so found. There was no practicable way of constructing a passageway seven feet

wide into and upon New street, as the space between the side of New street and the building as erected and constructed, at the time of the lease, was not more than thirty-two inches, and the top of the street was nearly as high as the basement. There was a convenient stairway, as convenient as could reasonably be made or required from the end of the passageway through the basement to the street.

We think, therefore, that the court could properly have decided, construing the lease, or that the jury could have found that the plaintiff had substantially performed the lease on his part, and was entitled to recover the rent of the defendants.

But even if this were not so we think there was sufficient evidence that the defendants had the possession and control of the basement from the first day of November, 1883, and that they did not reject or attempt to reject the premises or refuse to occupy them until early in February thereafter. We think there was sufficient evidence to justify the jury in finding that McMahone was the agent of the defendants to take and receive possession of the basement from the plaintiff. The evidence of the plaintiff, which is to some extent confirmed by other witnesses, standing alone, certainly tends to show that McMahone was the agent of the defendants, with whom he was authorized to deal in reference to the demised premises. It is true that this evidence was contradicted on the part of the defendants, but the conflict in the evidence made a case for the action of the jury. Therefore, after the plaintiff delivered the keys to McMahone and he retained them, and put up a sign advertising the basement for rent, and the defendants had during three months endeavored to obtain tenants·for the premises, it was then too late for them voluntarily to surrender the premises to the plaintiff and refuse to pay the rent for the quarter ending on the first day of February. Their only remedy was, not to refuse to pay the rent, but

4

if the plaintiff had failed fully to perform the lease on his part, to sue for, or to recoup or counterclaim the damages suffered by them on account of such failure.

While the lessee retains possession of the demised premises, he cannot escape liability for the rent, and that liability continues until he is evicted by the lessor or by paramount title, or until he voluntarily surrenders the demised premises because the lessor refused to give him possession of the whole thereof, or otherwise fails to keep some essential covenant on his part. Taylor's Landlord and Tenant, §§ 372, 379; Hunt v. Silk, 5 East, 449; Allen v. Pell, 4 Wend. 505; Etheridge v. Osborn, 12 id. 529; Arnold v. Clark, 45 N. Y. Sup. Ct. R. 252, Chadwick v. Woodward, 13 Abb. N. C. 441; Hay v. Cumberland, 25 Barb. 594.

We are therefore of opinion that no error was committed in the court below, and that the judgment should be affirmed with costs.

ANDREWS, J., concurs.