Titus, J.
On the 26th day of April, 1886, the defendant entered into a written lease with the plaintiff by which he rented a front room on the ground floor of No. 258 Michigan street, in this *444 city, for three years from the 1st day of May next ensuing, at the annual rent of $800, payable monthly, in monthly payments, the first of every month. The premises were to be used for a hotel bar. The defendant occupied the premises up to about the middle of May, 1888, and then left the premises and refused to pay rent accruing by the terms of the lease on the 1st day of May, 1888. This action was brought for the rent falling due for the month of May. The cause was tried at a trial term of the court and the jury rendered a verdict in favor of the defendant. The plaintiff now moves, on a case containing exceptions,- for a new trial. It appears that0the premises in question had no cellar, and that a partially open drain or sewer ran through under the floor of the premises, along the north side, and emptied into the Michigan street sewer, which communicates with the Hamburg canal. The sewerage from that portion of the house occupied by the defendant as well as from that portion occupied by the plaintiff passed into this drain and thence into the Michigan street sewer.
These and the premises in this vicinity were subject to overflow from the Michigan street sewer, occasioned by high water in the canal backing up into the sewer, and thence through the drain or sewer into the premises. On such occasions the drain would become stopped up and cause a stench, which would come up into defendant’s bar-room. This would continue until the drain was opened and cleaned out, when the sewerage flowed freely and without stench into the Michigan street sewer. This overflow and obstruction occurred a number of times while the defendant occupied the premises, but after being properly cleaned no trouble was experienced, either from the flow of the waste from the house or noxious smells. It appears that the defendant had lived in this neighborhood, which was subject to overflow from the canal, for a number of years, and must have been somewhat familiar with the condition of things in these premises. No complaint was made by the defendant to the plaintiff about the unpleasant or unwholesome condition of his premises, until about the time he left.
The plaintiff now claims the defendant had no right to abandon the premises and not pay the rent, and that the act of 1860, chapter 345, has no application to this case. As there are a number of causes now on the calendar ready for trial involving substantially the same questions raised here, I have thought best to give my reasons in writing for the conclusion I have arrived at on this motion.
At common law, the tenant was not excused from the payment of rent, even though the premises were destroyed, unless provision was made for such emergency in the lease, and the fact that they had been untenantable would not, in the absence of fraud, avail the tenant as a defense in an action on a lease containing a covenant for the payment of rent. 3 Kent’s Com., 465 ; Hallett v. Wylie, 3 Johns., 44; Westlake v. De Graw, 25 Wend., 669; Kingsbury v. Westfall, 61 N. Y., 356.
It is claimed by the defendant that the act of 1860 has changed the rule of the common' Jaw in this respect, and that if the premises become untenantable from causes other than such as result in *445 the total or partial destruction of the premises, the tenant may abandon them and absolve himself from the payment of further rent. Numerous cases have arisen since the act of 1860, and the courts have uniformly held that the rule of the common law in this respect has not been changed.
In Suydam v. Jackson, 54 N. Y., 450, the commission of appeals held that the act of 1860 did not release the tenant from his obligation to pay rent, except in cases where the premises were destroyed or so injured from fire, flood or fortuitous causes as to be untenantable, having reference to a sudden and total destruction by the elements acting with unusual power, or to an injury to the premises short of a total destruction occasioned in the same way, rendering them untenantable.
This construction of the statute has been followed by all of the courts of this state in numerous cases where the tenant has sought to invoke the aid of the statute in defense of an action for rent. Coulson v. Whiting, 14 Abb. N. C., 60.
It then follows that unless the defendant was justified in abandoning the premises, under some rule of the common law, he must pay his rent. If the landlord is guilty of fraud in leasing the premises, either in making a false statement as to their condition, or in concealing something which would make them untenantable or unfit for the purpose for which they were rented, or which would render them unfit for occupancy, the tenant would have the right to abandon the premises, and would not be liable for the payment of rent. Wallace v. Lent, 1 Daly, 481; Westlake v. De Graw, supra; Jackson v. Odell, 9 Daly, 371; Staples v. Anderson, 3 Rob., 327; Cesar v. Karutz, 60 N. Y., 229 ; Rhinelander v. Seaman, 13 Abb. N. C., 455.
In this case there is no suggestion by the defendant’s counsel of fraud on the part of the plaintiff in letting the premises, and nothing in the evidence from which an inference can be drawn. On the contrary, the evidence discloses the fact that the defendant must have been somewhat familiar with the surroundings and condition of the premises in the respects complained of, and of the condition of the sewers in that vicinity when flooded by water from the canal.
It is also claimed by the defendant that the conduct of the plaintiff in draining the closets, wash-basins and kitchen slops through this drain into the Michigan street sewer, was such as in law amounted to an eviction of the defendant from the premises.
I cannot agree that the facts of this case bring it within the rule relied upon by the learned counsel. Truesdell v. Booth, 4 Hun, 100; Fash v. Kavanagh, 24 How. Pr., 347; Peck v. Hiler, 31 Barb., 117; Edwards v. Candy, 14 Hun, 596.
The cases cited by the counsel for the defendant do not go to the extent of holding that because noxious smells came into the-premises, the tenant has the light to abandon them and absolve himself from the payment of rent. Nothing which does not interfere with them so as to deprive the tenant of the beneficial enjoyment of the premises is sufficient to warrant such abandonment. Ogilvie v. Hull, 5 Hill, 52.
*446 The residents of all large towns are more or less annoyed hy unpleasant and unwholesome smells, and it is not unusual for sewers and drains connected with buildings and the plumbing in them, to get out of repair or become stopped up, so as to prevent the free discharge of waste and night soil, and the necessary escape of noxious gases, but in the absence of a covenant to repair by the landlord the law imposes no duty upon him to* make such repairs as would abate the trouble; on the contrary, under the long established rule of the courts regulating the respective rights and duties of the landlord and his tenant, it is made the latter’s duty to make such repairs as are necessary to keep the premises in a proper sanitary condition. Chadwick v. Woodward, 13 Abb. N. C., 441.
In this case it is provided in the lease that the defendant shall keep the premises and every part thereof in good repair. It seems to me that i't was clearly the duty of the tenant under his lease to see that the sewer into which his premises drained, was kept clean and open, especially so when it required the outlay of no considerable sum to. occasionally clean it, when it became stopped up.
If the plaintiff neglected to perform his duty in that respect, it furnishes no excuse to the defendant when called on to pay his rent.
It is claimed by the defendant that he made a legal surrender of the premises to the plaintiff, and that she accepted them, and hence he is not liable for the rent. If the facts warranted this conclusion, the defendant’s position would be sound. The act of the defendant in delivering up the key, as h¿ claims he did, to the plaintiff, does not effect a surrender of the premises under this lease. Peck v. Knickerbocker Ice Co., 18 Hun, 183 ; Hegeman v. McArthur, 1 E. D. Smith, 147; Townsend v. Albers, 3 id., 560.
Assuming the defendant’s version of what took place, -when he claims to have surrendered the premises, is correct, it is far from being an acceptance of the premises by the plaintiff. On the fifteenth day of May, after the defendant had left the premises, and the day before he left the key at the house of Mrs. Sully, the plaintiff, her attorney called on the defendant and told him he was Mrs. Sully’s attorney and asked him for the rent; the defendant offered him the key and said he did not intend to pay any more rent, and was told in reply that he did not come for the-key but after the money, and that unless he settled he wrould be sued right along; the next day the defendant went to the plaintiff’s house and told her he had left the place and wanted to leave the key, and she said she did not know as it made any difference whether he, the defendant, had the key or she had it; it was just as safe in her hands as in his, and told him to leave it on the table.
This does not amount to an acceptance of the premises by the plaintiff ■ and a consequent release of the defendant from his contract to pay rent. What she said must be construed with what she was then doing to collect the rent.
The claim had been put into the hands of an attorney and he *447 was taking steps to collect the rent, and it would not be a fair inference from the testimony to say that she intended to, or did, accept the premises from the defendant, and especially so when a month’s rent was past due. Besides, the lease provides for the manner of surrendering the premises, and what acts shall evidence a surrender the parties have themselves agreed upon. It is undoubtedly competent for the parties to agree upon a cause or emergency which, if it arises, will be sufficient to warrant the tenant in surrendering the premises, notwithstanding the law of 1860, and they may agree that that act .shall not govern them in the transaction, and to provide, if they so desire, that for no cause shall the tenant be allowed to surrender or be excused from the payment of the rent, and the tenant may waive the benefits intended to be conferred upon him by the statute. Indeed, the act itself provides that if the building shall be destroyed or injured so as to become untenantable and unfit for occupancy, the lessee shall not be bound to pay rent after such destruction or injury, “unless otherwise expressly provided by written agreement or covenant.”
By the' terms of the lease between these parties it is expressly provided, “ That if said premises shall be destroyed by fire or so much damaged as to render them untenantable without the fault of the party of the second part (the defendant), either party may within thirty days thereafter elect to terminate this lease, and the term hereby granted, by giving to the other party written notice of the same, * * * and thereupon the rent to cease upon the party of the second part paying the rent that has accrued; but said term to cease or be surrendered by the said party of the’ second part, or said rent to cease from no other cause without consent of the first party.” Thus it would seem that the parties have fixed upon the cause for which the lease may be terminated, destruction of the premises by fire or so much damaged as to render them untenantable, but for no other cause. The emergency which the parties have agreed upon as a cause of surrender has not arisen and consequently the premises could not be surrendered and abandoned without the consent of the plaintiff; and, as has been stated, the transaction testified to did not amount to a voluntary surrender and acceptance of the premises. If the contingency provided for in the lease, which would justify an abandonment of the premises, had arisen, it would have been the duty of the party desiring to terminate the lease to give the other party written notice of his election to terminate it, within thirty days thereafter.
Then, it seems to me, another reason why the defendant cannot be excused from the payment of rent he rented the premises and went into possession under such circumstances as that he must be presumed to have a knowledge of the occasional flooding from the canal. There were no fraudulent representations to bring it within the rule laid down in Cesar v. Karutz. It has been held that when a tenant enters into possession of premises having a knowledge of the facts as to their condition, or having it within his power to examine the premises, it is liis duty to do *448 so, and if he knows or could ascertain their condition and neglects to do so, he cannot avail himself of their unfitness as a defense in action for the rent. There is no implied covenant that the premises are fit for the purpose for which they were rented, or that they will remain tenantable and fit for occupancy during the term. 25 Wend., 669; McGlashan v. Tallmadge, 37 Barb., 313; Jaffe v. Harteau, 56 N. Y., 398; Edwards v. N. Y. & H. R. R. Co., 98 id., 245; Coulson v. Whiting, supra.
I think, therefore, the verdict of the jury should be vacated and set aside, and a new trial ordered, with costs to abide the event of the action.