CORNELIUS DONKERSLEY v. SALLY M. LEVY AND PAUL ASCH.

*Money Had and Received—Surrender of Lease by Operation of Law.*

An employer reserved a certain amount from the wages of his employees under an arrangement by which he was to pay their grocery accounts, but did not pay it to the party to whom it

was due. *Held* that the latter had an action against him for money had and received.

An actionable right is not defeated by the omission of a mere form.

In an action for money had and received, plaintiff was asked as a witness how much defendant owed him. *Held* that the question was not necessarily improper for being too general, especially where it appeared that details were gone into and evidence of items was submitted that was not given in the record.

It cannot be assumed that evidence that was given, but is not set forth in the record, was inconclusive.

Written admissions of the defendant, if relevant, are admissible under the bill of particulars; he can hardly be surprised by them.

An agent executed a lease to certain parties for his principal. While it was still in force the principal executed an independent lease of the same premises to the agent, who then verbally leased them for a smaller rent than before to the original tenants who continued in possession without change. *Held* that the original lease was surrendered by operation of law, and not assigned to the agent, and therefore that he could not claim from the tenants the difference in rent between the two.

Error to Marquette. Submitted October 18, 1877. Decided January 9, 1878.

ASSUMPSIT. The facts are in the opinion.

*Ball & Owen* for plaintiff in error. Rent goes with the estate if not reserved, *Van Wicklen v. Paulson*, 14 Barb., 654; *Crosby v. Loop*, 13 Ill., 627; *Dixon v. Niccolls*, 39 Ill., 384, even if the grant is only for a term, *Riddle v. Littlefield*, 53 N. H., 508; Taylor's Land and Ten., § 161; Washb. Real Estate, p. 391; Bac. Ab., Tit. Leases, n. 1; Tit. Rent, n. 2.

*W. P. Healy* for defendants in error. The purpose of a bill of particulars is to prevent the defendant's being surprised at the trial by unexpected claims made under the common counts. *Mason v. School District*, 34 Mich., 233.

GRAVES, J. Defendants in error sued on the common counts and made claim that the plaintiff in error held

and refused to pay over moneys he had collected at their request from his servants upon debts due from the latter to defendants in error. The general issue was pleaded with notice of set-off, and August, 1876, a verdict was returned in favor of defendants in error for $3,205.10. Donkersley complains of rulings at the trial.

There was evidence conducing to make out that it was agreed between the parties in contemplation of sales of goods from day to day by Levy and Asch to persons in the service of Donkersley, that Levy and Asch might at stated intervals report such sales to Donkersley, so as to show the amount to each person, and that he, Donkersley, would then hold back and retain from the wages going to such persons the amounts so due from them to Levy and Asch. There was also evidence tending to show that pursuant to this arrangement Levy and Asch proceeded for some time to sell goods to Donkersley's workmen, and to report to him the sales so made, and that he recognized the existence of the arrangement and to a considerable extent acted upon it; that he settled with his hands on that basis and reported the settlements back to defendants in error, and as the result of such arrangement and settlements retained and kept back the amounts going to defendants in error,—his workmen only receiving and he only paying the balances left after deducting such amounts, and that he has refused to pay over what he so reserved.

The situations and relations of all the various persons concerned, together with the surrounding facts not disputed and Donkersley's silence on the subject when on the stand, afforded ground of inference that these workmen thus settled with by Donkersley were aware of the arrangement for deducting from their wages what they owed to Levy and Asch and assented and settled on the basis of it. It is to be presumed, in the absence of evidence to the contrary, that all the parties sought to take care of their own affairs and to deal honestly and to acquit themselves of their duty and obligations, and

that they acted in a reasonable way and as men usually do in like situations, and these considerations apply to these workmen, and it would violate all rules to suppose that these persons who had respectively incurred little debts to defendants in error for daily wants were in ignorance of Donkersley's agreement to withhold from them and pay over, or if aware of it did not assent and desire him to execute the trust; and still, without making any other provision, proceeded without exception to settle fully with him and allow him in every instance to keep back and retain the exact amount going to Levy and Asch. The supposition is incredible. It was Donkersley's duty to inform his hands of his engagement, and it was their duty to provide for paying their debts. When on the stand he did not deny having informed them or that they acquiesced, nor even intimate that the amounts they left with him were not for Levy and Asch. The mind is forced to an opinion that they knew of the arrangement, and not only assented to it, but acted upon it. Surely there was evidence tending to show that Donkersley's hands left the money in accordance with the agreement between the parties in this action and strictly in furtherance of it, and we think there was a case for the jury under the count for money had and received. *Beardslee v. Horton*, 3 Mich., 560; *Moore v. Mandlebaum*, 8 Mich., 433; *Spencer v. Towles*, 18 Mich., 9; *Heimbach v. Weinberg*, id., 48; *Looney v. Looney*, 116 Mass., 283; *Cranson v. Ockington*, 118 Mass., 409; *Parry v. Roberts*, 3 Adol. & Ell., 118; *English v. Devarro*, 5 Blackf., 588. The law does not require an idle ceremony to ground an actionable right. *Hosmer v. Wilson*, 7 Mich., 294–304–305; *Carpenter v. Holcomb*, 105 Mass., 280–284. And it was quite unnecessary to observe the empty form of full payment by Donkersley to his hands and the passing back across the table of the amounts collectible for Levy and Asch. The end was attained in a lawful and business way, and that was sufficient. *Connecticut Mutual Life Ins. Co. v. State Treasurer*, 31 Mich., 6; *Floyd v.*

*Day*, 3 Mass., 403; *Fairbanks v. Blackington*, 9 Pick., 93; *Tuttle v. Mayo*, 7 Johns., 132; *Langley v. Warner*, 3 Comst., 327, 329; *Graham v. The Bank*, 5 Ohio (Hammond), 265; *Martin v. Farnum*, 24 N. H., 191; *Andrew v. Robinson*, 3 Campb., 199; *Beardsley v. Root*, 11 Johns., 464; *Wilkinson v. Clay*, 6 Taunt., 110.

The store where Levy and Asch sold goods was connected with large furnace works of the Morgan Iron Company and belonged to that corporation.

In March, 1874, and for some time prior thereto, Donkersley was vice-president of this corporation and apparently its general agent, and at that time the corporation acting by him made a written lease of the store to Levy and Asch for three years from the 26th of February, 1874, and inserted a provision giving them an option for two years more. This instrument contained several special provisions, and it assumed to secure to Levy and Asch certain exclusive and important privileges and advantages. Among other matters it made regulations under which the company agreed to collect of its servants what the latter might owe to Levy and Asch and to be the agent of Levy and Asch in regard to that business. The specified rent and consideration was $2,500 per year, payable by Levy and Asch monthly in advance. The instrument was executed by Donkersley on behalf of the corporation.

October first, 1874, or about seven months later, the company made another lease in writing. This was given to Donkersley himself, and it was for three years from its date, and accordingly for a term about seven months longer than the fixed term in the first. It embraced a large amount of property and included the store in question and other things desired and given with it. Donkersley now claims that this lease to him conveyed and entitled him to collect from Levy and Asch the rent accruing subsequently on the lease to them, and that he was hence entitled to set-off the same in this cause.

Now, the lease to Donkersley contained no exception or reservation and did not purport to be subject to the prior lease. Notwithstanding his connection with the first lease, the second from the same lessor to himself, and which he accepted, was not only so shaped as not to recognize the first, but also to be in terms inconsistent with it. At the same time all the parties proceeded as though the first lease was determined. The company did so in giving the second lease and in taking no attitude implying a different view. Donkersley did so in accepting that lease, and again, he and the defendants in error did so by making a new arrangement. They at once entered into a distinct verbal agreement not compatible with the co-existence and operation according to its terms of the first lease. This transaction would seem explicable only upon the supposition that that lease was ended. It provided for a present holding by defendants in error under verbal terms and at an annual rent of $2,000 instead of $2,500, as in the lease from the company, and laid down a very similar plan for conducting business.

The oaths of the parties substantially agree upon all matters affecting the present consideration.

It is true that Levy and Asch did not remove from the store when these events occurred; but it is also true that the company gave and Donkersley accepted with the assent of Levy and Asch a lease inconsistent with that which had been given to the latter, and that Donkersley at the same time made to them and they accepted his verbal lease for the time being and which was also inconsistent with the continuance in force of the first lease.

Simultaneously and pursuant to the will of all, the second lease was executed to Donkersley and the first lease rendered inoperative and defendants in error were caused to be lessees of Donkersley under his verbal lease and the state of the holding and possession was changed so as to conform to such arrangements, and the result was that the lease from the Iron Company to defendants

in error was surrendered by operation of law and not assigned to Donkersley by force of the lease to him. Taylor on Land. & Ten. (6 ed.), 392; Woodfall on Land. & Ten. (9 ed.), 267; *Beardman v. Wilson,* L. R. 4 C. P., 57; *Thomas v. Cook,* 2 B. & Ald., 119; *Walker v. Richardson,* 2 Mees. & Wels., 882; *Lyon v. Reed,* 13 Mees. & Wels., 285; *Nickells v. Atherstone,* 10 Q. B., 944; *Grimman v. Legge,* 8 B. & C., 324; *Dodd v. Acklom,* 6 Man. & Gr., 672; *Walls v. Atcheson,* 3 Bing., 462; *Lloyd v. Langford,* 2 Mod., 174; *Smith & Coles v. Lovell,* 1 E. L. & E., 374; *Crowley v. Vitty,* observations of Parke, B., 9 E. L. & E., 501; *M'Donnell v. Pope,* 13 E. L. & E., 11; *Hesseltine v. Seavey,* 16 Me., 212; *Elliott v. Aiken,* 45 N. H., 36; *Shepard v. Spaulding,* 4 Met., 416; *Talbot v. Whipple,* 14 Allen, 177; *Amory v. Kannoffsky,* 117 Mass., 351; *Peters v. Newkirk,* 6 Cow., 103; *Van Rensselaer's Heirs v. Penniman,* 6 Wend., 569; *Bailey v. Delaplaine,* 1 Sandf. Sup. Ct. R., 5; *Smith v. Niver,* 2 Barb., 180; *Whitney v. Meyers,* 1 Duer, 266; *Bedford v. Terhune,* 30 N. Y., 453; *Davison v. Gent,* 38 E. L. & E., 469; *Ive's Case,* 5 Co. R., 11 a; *Logan v. Anderson,* 2 Doug. (Mich.), 101.

No other sensible construction appears admissible on the facts as shown by Levy and Donkersley. There was hence no valid ground for the claim of right to set off rent, and the result of the ruling upon the point was right. It is not material to examine the explanation given for it. But if in strictness no surrender had taken place it would be difficult for other reasons to maintain the set-off.

Certain written statements were objected to as inadmissible under the bill of particulars which had been furnished by defendants in error.

The objection does not appear tenable. These papers were statements of account which Donkersley had drawn up and delivered to defendants in error pursuant to the arrangement under which the business in question had been conducted, and they were his admissions and were

offered to help make out the case particularized in the bill, and no other, and although they were not copies of the bill or of sections of it, it is not perceived that they were irrelevant as evidence to aid the claim described in it, and there is no reason to suppose the plaintiff in error was surprised by the introduction of his deliberate written admissions to prove the demand set forth in the bill of particulars.

It is worthy of notice, too, that other evidence, not reported or described, was given to prove the items in the bill of particulars, and there is no foundation for the assumption that it was not conclusive.

One of the plaintiffs below was asked how much the defendant owed them, and an objection was interposed that the inquiry was too general.

The question was not for that reason improper. The amount was a fact to be shown, and it was not unlawful to inquire of the party what it was. What weight a categorical answer to such a question standing alone should receive is a separate consideration. It would depend on the particular circumstances. In this case the amount was not left to rest on the answer given to the question. Details were gone into, and other evidence not spread upon the record was submitted to prove the demand by items. In case a similar question should call for an opinion upon matter of law or fact and be excepted to on that ground it would be needful to consider it under another aspect.

We have examined the case under all the objections insisted on by the plaintiff in error, and nothing appears of which he may rightly complain.

Judgment affirmed with costs.

CAMPBELL, C. J., and GRAVES, J., concurred.

MARSTON, J., did not sit in this case.