DAVIS v. GEORGE & a.

67   393
71   425

In a lease of a furnished house for a term of years, there is no implied covenant that the house is suitable for the lessee's occupation.

A provision in a lease relieving the lessee from his agreement to restore the leased house at the end of the term if it should be destroyed by inevitable accident, does not also relieve him from the payment of rent upon the happening of that event.

In such a case furniture leased with the realty, for which the lessee agreed to return furniture of equal value at the end of the lease, must be accounted for by him, though destroyed by inevitable accident.

DEBT, for rent of a hotel building and for $1,137.50 for furniture and supplies. Plea, the general issue, with a brief statement, which the plaintiff moves to reject. From this statement and the admissions of the parties the following facts appear: Novem-

ber 2, 1885, the plaintiff leased to the defendants the hotel with all the furniture therein belonging to the lessor, excepting a few specified articles, for the term of five years from November 1, 1885, upon an annual rental of $700 payable in equal quarterly payments. The defendants covenanted that they would quit and deliver up the premises to the plaintiff at the end of the term in as good order and condition, reasonable use and wearing thereof or inevitable accident excepted, as the same are in or may be put into by the lessor; that they would not make or suffer any waste thereof, or assign or underlet the premises without the lessor's consent; that the lessor might enter to view the premises, to make improvements thereon, and to expel the lessees if they failed to pay the rent. Under an agreement executed at the same time the plaintiff turned over to the defendants the furniture in the hotel appraised at $1,137.50, the parties stipulating therein that "at the expiration of a lease of even date made by the parties of said house and the furniture therein, said George & Co. are to turn back to said Davis furniture and supplies of the value of said $1,137.50 at the valuation of the same appraisers or others mutually agreed upon by the parties, such articles so appraised back to be suitable for hotel purposes. . . . The lease referred to and this agreement are to be considered and construed together as parts of one contract." There was no special stipulation in this agreement about a return of the furniture in case it was destroyed by fire. The hotel with its contents was wholly destroyed by fire on the fourteenth day of November, 1886. The defendants paid the first year's rent and $175 for the next quarter's rent in advance.

In their brief statement the defendants claim that there was an implied agreement that the hotel was inhabitable and suitable for the purposes for which it was leased, when in fact from the date of the lease to the time of the fire it was uninhabitable and unsuitable for those purposes on account of defective sewerage and on account of the defective construction of the chimneys and flues, in consequence of which the fire occurred; that by the terms of the lease they were excused from the performance of their covenants because the premises were destroyed by inevitable accident; that for the same reason they were not obliged to perform their agreement about replacing the furniture; and that before the rent claimed by the plaintiff became due, they surrendered to him the entire estate they had in the premises and he accepted the same.

*Bingham, Mitchell & Batchellor* and *Smith & Sloan*, for the plaintiff.

*Bingham & Bingham* and *Irving W. Drew*, for the defendants. It is an established doctrine, that in the case of a lease of a

furnished house there is not merely an implied contract on the part of the lessor that the house demised should be habitable, but an implied condition that the lease should be void if it were not, and the tenant chose to quit. *Smith* v. *Marrable*, 11 M. & W. 5; *Sutton* v. *Temple*, 12 M. & W. 52, 62; Wood L. & T., *s.* 395; Tay. L. & T., *s.* 383; *Wilson* v. *Finch-Hatton*, 2 Ex. D. 336; *Potter* v. *Truitt*, 3 Harr. Del. 331; *Perrett* v. *Dupré*, 3 Rob. La. 52; *Mechelen* v. *Wallace* 7 A. & E. 54 *n.; White* v. *Montgomery*, 58 Ga. 204.

*Per Curiam.** In a lease of land there is ordinarily no implied covenant or condition that the premises are suitable for the purposes of the lessee's occupation. *Elliott* v. *Aiken*, 45 N. H. 30, 36; *Scott* v. *Simons*, 54 N. H. 426; *Dutton* v. *Gerrish*, 9 Cush. 89; *Foster* v. *Peyser*, 9 Cush. 242; *Libbey* v. *Talford*, 48 Me. 316, 318; *Monk* v. *Cooper*, 2 Ld. Ray. 1477; *Belfour* v. *Weston*, 1 T. R. 310; *Wilkinson* v. *Clauson*, 29 Minn. 91; *Doyle* v. *Railway*, 147 U. S. 413, 429; *Edwards* v. *Railroad*, 98 N. Y. 245, 246. It is the duty of the court in such a case, as in cases of other contracts, to ascertain the intention of the parties from competent evidence. When A "leases" or "lets" his house to B for a term of years, there is no difficulty in finding that he intends to warrant that he has the legal right or title which he assumes to convey, and that B shall have the right to the occupancy of the house during the term. *Hart* v. *Windsor*, 12 M. & W. 68, 85. To find, in addition, that A binds himself by an agreement that the premises shall be fit, convenient, or suitable for the particular occupancy which B desires, would require further evidence than is furnished by the technical terms of the lease. If the lessee examines the property, it cannot be presumed that the parties intended he should rely upon the lessor's judgment as to the suitableness of the premises for his business or habitation. The reasonableness of the doctrine expressed by the maxim *caveat emptor* would preclude such an inference. His mistake in deciding that question does not raise an implied covenant on the part of the landlord that his decision was correct. *Cleves* v. *Willoughby*, 7 Hill 83, 86; *Edwards* v. *Railroad, supra; Bowe* v. *Hunking*, 135 Mass. 380. Whatever a landlord's liability may be for fraud or deceit in regard to the condition of leased premises (*Scott* v. *Simons, supra, Minor* v. *Sharon*, 112 Mass. 477, *Bowe* v. *Hunking, supra*), the brief statement does not raise that question, and it is unnecessary to consider it. The defendants do not seek to charge the plaintiff for fraudulently inducing them to accept the lease. It is not claimed that the plaintiff knew that the hotel was not fit for occupation at the date of the lease, or that he was wilfully ignorant of its unsuitable condi-

---

* See foot-note on page 80.

tion, or that the defendants did not examine the premises with reference to its adaptation to hotel purposes. The sole contention of the defendants is, that in a lease of a furnished house there is an implied covenant or condition that it is reasonably fit for the lessee's intended occupation. If the house is unfurnished, it is admitted that such an inference would not be supported by sufficient evidence. A broad distinction in this regard is suggested between a lease of a furnished and a lease of an unfurnished house, which on principle is not apparent. If the landlord knows that the tenant proposes to occupy the house for a term of years as a place for the accommodation of the travelling public, why should the fact that the landlord also leases to him the furniture in the house imply an additional agreement on his part that the house is suitable for hotel purposes or for habitation? Want of repair, and structural defects in the house, do not depend upon the furnishings; and there is no more reason why a landlord should bind himself by a warranty against such imperfections in a lease of a furnished house, than there is in a lease of an unfurnished house. To hold that such a warranty is implied in the one case and not in the other would introduce an arbitrary distinction not based on any apparent practical reason, and not within the contemplation of the parties to such contracts.

A few cases, however, may seem to support to some extent the defendants' contention. In *Smith* v. *Marrable*, 11 M. & W. 5, the language of *Parke*, B., sustains the broad position that in a lease of a house, whether furnished or not, there is an implied covenant or condition that it is habitable. He cites and relies upon two cases—*Edwards* v. *Etherington*, Ry. & M. 268, and *Collins* v. *Barrow*, 1 Moo. & R. 112; but subsequently, in *Hart* v. *Windsor*, 12 M. & W. 68, 86, he repudiates those cases, saying "we all concur in the opinion that they are not law;" and since that decision they have been treated as overruled cases. *Sutton* v. *Temple*, 12 M. & W. 52; *Surplice* v. *Farnsworth*, 8 Scott N. R. 307, 316. In *Smith* v. *Marrable*, Lord *Abinger* said he required no authorities to hold that "a man who rents a ready furnished house does so under the implied condition or obligation—call it what you will—that the house is in a fit state to be inhabited;" but in *Sutton* v. *Temple*, *supra*, he said that *Smith* v. *Marrable* was a case of a "contract of a mixed nature—for the letting of a house *and furniture* at Brighton, and every one knows that the furniture upon such occasions forms the greater part of the value which the party renting it gives for the house and contents. . . . Where the party has had an opportunity of personally inspecting a ready furnished house by himself or his agent before entering on the occupation of it, perhaps the objection would not arise; but if a person take a ready furnished house upon the faith of its being suitably furnished, surely the owner is under an obligation to let it in a habitable state." In

the same case, *Parke*, B., said that *Smith* v. *Marrable* "resembles. the case of a ready furnished room in a hotel which is hired on the understanding that it shall be reasonably fit for immediate habitation. In such case the bargain is not so much for the house as the furniture." In *Hart* v. *Windsor*, *supra*, *Smith* v. *Marrable* was further distinguished on the ground that it was a case of " a ready furnished house for a temporary residence at a watering-place." In *Chester* v. *Powell*, 52 L. T. Rep. N. S. 722, it is said that that case "is only an authority for the proposition that in taking furnished apartments at the seaside, or for temporary occupation only, there is an implied warranty that they must be fit for occupation." In *Mechelen* v. *Wallace*, 7 A. & E. 54 *n.*, cited by the defendants, there was an express agreement that the leased house was to be in a suitable condition for the lessee's use.

In this country, the broad doctrine that there is an implied covenant in a lease of a furnished house for a term of years that it is habitable, for which *Smith* v. *Marrable* has been cited as a leading authority (1 Wood L. & T. 128, 1 Tay. L. & T., *s.* 383), has received little, if any, sanction. If it has not been denied, it has been so far modified and limited as not to be applicable to this case. In *Dutton* v. *Gerrish*, 9 Cush. 89, there was a lease of a furnished warehouse, which it was claimed the lessor impliedly warranted was reasonably fit for occupancy. But in the opinion the court say,—" It is not described as hired or intended for any specific purpose, or for any particular kind or branch of business; and, though it was known that the plaintiffs were dealers in dry goods, and would probably use the warehouse in that business, yet that is not expressed in the written agreement; and it would have been quite within the right of the lessees to use the estate for any other branch of business, or for a manufactory or dwelling-house. It therefore does not come within the authority of cases wherein furnished rooms in a lodging-house are let for a parlor, bedroom, and the like, for a particular season of the year, in which a warranty may be implied that the rooms are properly furnished and suitably fitted for such particular use. *Smith* v. *Marrable*, 11 M. & W. 5. But the authority of these cases has been much shaken, if not wholly overruled, so far as it applies to real estate, by the subsequent cases. *Sutton* v. *Temple*, 12 M. & W. 52; *Hart* v. *Windsor*, 12 M. & W. 68." See, also, *Franklin* v. *Brown*, 118 N. Y. 110; *McGlashan* v. *Tallmadge*, 37 Barb. 313, 315; *Doyle* v. *Railway*, 147 U. S. 429; *Edwards* v. *Railroad*, 98 N. Y. 246; *Howard* v. *Doolittle*, 3 Duer 464; *Naumberg* v. *Young*, 44 N. J. Law 331; *Scott* v. *Simons*, 54 N. H. 426; *Chadwick* v. *Woodward*, 13 Abb. N. Cas. 441, 450.

The case of *Smith* v. *Marrable*, therefore, when properly understood, simply holds that it is a good defence to an action for rent of a furnished house at a watering-place, let to the tenant for a few weeks without his personal inspection, that at the date of the

lease it was so infested with vermin as to render it impossible for him to occupy it with reasonable comfort, and that he moved out after a few days' occupation. To this extent it was followed as an authority in *Wilson* v. *Finch-Hatton*, 2 Ex. D. 336. The case of *Potter* v. *Truett*, 3 Harr. Del. 331, is based upon the overruled case of *Edwards* v. *Etherington*, *supra*, and contains no discussion of other authorities, while *White* v. *Montgomery*, 58 Ga. 204, and *Perrett* v. *Dupré*, 3 Rob. La. 52, are based upon statutory provisions.

But whatever the result might be in the case of a lease of furnished rooms, not examined by the lessee, for an immediate temporary occupancy of a few days or weeks, *Smith* v. *Marrable* is not an authority for the defendants in this case. The lease which the defendants accepted from the plaintiff was for a term of five years, and contained no reference to the purposes for which they proposed to occupy the premises. There is nothing in the case indicating that they relied upon any representation of the plaintiff in regard to the habitable condition of the premises, or that they did not themselves examine them. Their knowledge of their adaptability for the purposes of their occupancy was presumably more accurate and satisfactory to them than the plaintiff's would have been, in the absence of an express agreement upon that subject. It also appears, from the brief statement, that their occupancy of the hotel covered a period of more than twelve months, which shows that the condition of the premises was not such as to render them uninhabitable and useless for hotel purposes, within the meaning of the cases they rely upon. A holding in this case that there is an implied warranty of suitableness would be not only unsupported by authority, but would make it necessary to disregard the almost unbroken line of cases which have established the rule that such a covenant cannot be implied from an agreement to lease real estate. If this finding of the parties' intention in some instances results in great hardship and loss to the tenant, against which he might have protected himself by apt provisions in the contract, the legislature alone may relieve future tenants from such consequences. *Phillips* v. *Stevens*, 16 Mass. 238; *Hallett* v. *Wylie*, 3 Johns. 44, 46.

The claim that the defendants are not liable for the rent of the premises because they were destroyed by inevitable accident cannot be sustained. They agreed to restore the premises at the end of the term in as good order and condition, reasonable use and wearing thereof or inevitable accident excepted, as the same are in or may be put into by the lessor, and not to make or suffer any waste. Under this provision of the lease the destruction of the hotel by inevitable accident did not relieve the defendants from their obligation to pay the rent. It was not agreed that such an event should amount to a termination of the lease during the term. .

It is also contended, that as the furniture was destroyed by fire they are relieved from their obligation to return it to the plaintiff, or to account to him for the value of the furniture leased to them. The lease and the supplementary agreement, by the express terms of the latter, are to be considered as parts of one contract. The lease covers the hotel property, with all the furniture therein belonging to the lessor, excepting a few articles. The defendants' contract, to quit and deliver up "the premises" at the end of the term, may refer to the realty only, or to the realty and personalty. By the supplementary agreement the plaintiff turns over to the defendants furniture of a stated value, and at the expiration of the lease the defendants were to turn back to the plaintiff furniture of the same value at the valuation of the same appraisers, or others agreed upon. No allowance was to be made for depreciation by use. The personal property to be returned was to be worth as much as the personal property leased. The natural inference is, that the provision for inevitable accident in the lease related to the realty merely, and not to the personalty. No construction can relieve the defendants from their express contract to return furniture of the stipulated value.

The allegation of a surrender of the lease by the defendants and its acceptance by the plaintiff is the statement of a sufficient defence to the claim for rent. But the fact that the defendants left the premises because the house was burned would not be a defence. The plaintiff's acceptance of the attempted surrender is material. This is the only part of the brief statement that, if proved, would relieve the defendants from their agreement to pay the agreed rental.

*Case discharged.*

Chase, J., did not sit: the others concurred.