GINGRASS v. MATHER.[1]

LANDLORD AND TENANT — SURRENDER BY TENANT — ACCEPTANCE OF ASSIGNEE OF LEASE.

Plaintiff leased lands to W. for mining purposes. W. executed a sublease to defendant, and then assigned his interest thereunder to plaintiff. Soon thereafter a corporation was formed to operate the mine, to which the sublease was assigned by defendant. A number of written agreements changing the terms of the sublease were made between plaintiff and the corporation, of which defendant had knowledge, he being an officer of the corporation, but to which his assent was not requested, and no demand was made on him for any payments under the lease for 11 years, when this action was brought to recover the same. Held, that the lease was surrendered, by operation of law, as to defendant, plaintiff having accepted the corporation as her tenant.

Error to Marquette; Stone, J. Submitted October 22, 1901. Decided November 4, 1901.

Assumpsit by Victoria Gingrass against William G. Mather for royalties under a mining lease. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

August 14, 1885, plaintiff, being the owner of certain lands, executed a lease thereof to Anson B. Miner and

---

[1] Rehearing denied February 11, 1902.

William L. Jones for 21 years, for the purpose of mining gold. August 19, 1885, Miner and Jones assigned it to Peter White. It provided that if a mine should be discovered after August 14, 1886, the lessees were to work it to full capacity, and pay as royalty one-tenth of the product; but if they should not find a mine, or if they should find a mine and not work it vigorously, they were then to pay as royalty $5,000 annually at the expiration of the year. The lessees were authorized to terminate the lease by giving ten days' written notice. On August 1, 1887, White sublet a portion of this land to defendant, Mather, for the full term of the original lease, lacking two days. The provisions of the sublease were the same as those of the original lease. At the same time Mr. White assigned his interest in this lease to plaintiff, and paid her $5,000 as royalty.

August 20, 1887, the Michigan Gold Company was organized, and filed its articles of association. It was in process of formation at the time of the sublease to Mather, and the sublease was made to him with the understanding that he took it for, and was to transfer it to, the Michigan Gold Company, when organized. September 3, 1887, Mather assigned this lease to the company, by which assignment it agreed to prosecute the explorations required by the lease, or, should it decide to abandon or surrender it, to notify the plaintiff, who had become the assignee and the owner of the lease by the assignment of Mr. White. The company immediately took possession of the property, and all subsequent transactions were conducted between it through its agents and the plaintiff. By the terms of the original lease, cessation of work for 30 days at one time before a mine was discovered should work a forfeiture at the option of the plaintiff. It appears that no mine was discovered, and it is claimed by the plaintiff that the terms of the lease have not been complied with, and she seeks to recover the royalty of $5,000 per year since the date of the sublease. Neither party terminated the lease by notice.

Several written agreements were executed between

plaintiff and the Michigan Gold Company, which are important. On January 4, 1888, plaintiff executed an agreement releasing the Michigan Gold Company from any payment of cash royalty up to August 14, 1888, and allowing it to quit work entirely from January, 1888, to May 15, 1888, on certain conditions. On December 29, 1892, an agreement under seal was made between plaintiff and her husband and the Michigan Gold Company relieving the company from complying with its lease for six months, in consideration of which the company agreed to work double the number of men required by the lease during the remainder of the calendar year. July 1, 1893, plaintiff and her husband executed under seal another agreement, providing that the Michigan Gold Company might suspend all work until May 1, 1894, without incurring any forfeiture "under the lease from the said parties of the first part," upon condition that the Michigan Gold Company pay the taxes for the year 1893. September 24, 1894, they made another agreement with the Michigan Gold Company, releasing it from all work under the lease until June 1, 1895. June 27, 1895, they executed a similar agreement for the suspension of all work by the company until July 10, 1895. On September 6, 1895, plaintiff and her husband, of the one part, and the Michigan Gold Company, of the other, executed an agreement under seal, by which it was agreed as follows:

"The Michigan Gold Company has this day agreed with Peter E. Gingrass and Victoria Gingrass, his wife, that the lease now held by the Michigan Gold Company from said parties may be so far suspended that the said Michigan Gold Company need not keep any men at work until 30 days after notice from the said parties, Peter E. and Victoria Gingrass, that they wish this agreement suspended or vacated; and that it is understood and agreed that the said Peter E. Gingrass may take possession of the Michigan Gold Company location and property, and use the engine and other machinery without any charge therefor, in consideration of the suspension of the lease as above stated. The Michigan Gold Company will also have the right to cancel this agreement by giving the

said Gingrasses 30 days' notice at any time after the 1st day of November next.    In case either party should want to sell the property or their respective rights thereunder at any time, the time of notice may be shortened to 30 days after notice has been given by either party to that effect. The arrangement heretofore made by James E. Jopling, on the part of the Michigan Gold Company, with Peter E. and Victoria Gingrass, is to cease as of the 1st day of September, and this agreement takes its place, so that the Michigan Gold Company may cease work without prejudice to its rights under the lease; and it is understood that the said Peter E. Gingrass and Victoria Gingrass are tenants under the Michigan Gold Company, and will vacate at any time under the conditions hereinabove stated."

In addition to this written evidence, plaintiff, during the 11 years after this lease was executed, dealt exclusively with the Michigan Gold Company, and made no claim, verbally or written, against Mr. Mather for the payment of rent.    The court directed a verdict for the defendant upon the ground that plaintiff had released defendant, and that the lease as to him was surrendered.

*M. H. Crocker* (*Tarsney & Fitzpatrick*, of counsel), for appellant.

*George Hayden* (*Benton Hanchett*, of counsel), for appellee.

GRANT, J. (*after stating the facts*).    It is matter of common knowledge that mining operations require large capital, and are seldom carried on by individuals, but almost universally by corporations.    Options or leases for long terms of years are usually obtained from the fee owners by individuals, corporations formed, and the leases then assigned to the corporations.    The business in this case was done in the usual way.    While this fact would not release the defendant from the obligations of his lease, it is, however, a fact important to consider in connection with the other facts in the case, and the manner in which the parties dealt with each other after the execution of the lease and until suit was brought.

The several written agreements with the Michigan Gold Company, above mentioned, changing the terms of the original lease, are consistent only with the recognition of the company as plaintiff's tenant, and a release of the defendant from all obligation under it. Some of these agreements were executed when defendant was an officer of the company, and others when he was not an officer, but only a stockholder. Plaintiff could not have two tenants, to either of which she might look for rent at her option. Had the dealings with the company involved only the payment of rent, undoubtedly the defendant would not be discharged from liability. Payment of rent alone does not operate as a surrender, or a recognition of an assignee as the landlord's tenant. The rule, however, is well settled that, where the landlord's dealings with an assignee of the lease, by written agreements and otherwise, are consistent only with the theory that the parties are dealing as landlord and tenant, the original lessee is released, and the assignee is accepted by the landlord as his tenant.

While it is probably true that defendant had knowledge of all these agreements, and some of them were made at his request as an officer of the company, this fact does not relieve the plaintiff from the legal effect of her conduct and writings. She was dealing with an entity entirely distinct from the defendant, Mather. If she had desired to hold Mr. Mather when these agreements were made changing the terms of the sublease, she should have said, done, or written something to indicate her intention to hold the defendant, or to obtain from him consent to a waiver of the changes. Plaintiff undoubtedly knew at the beginning that this lease was to be assigned to the company, and that it was to carry on the business, develop and work the mine. Defendant was in possession of the property, if at all, only for a few days; and at no time did she make any claim upon defendant for the payment of royalty, or attempt to negotiate with him individually in regard to the various changes which were made. The

court correctly held that the lease, as to defendant, was surrendered by operation of law. The case comes within the principle of the following cases: *Logan* v. *Anderson*, 2 Doug. 101; *Donkersley* v. *Levy*, 38 Mich. 54; *Walsh* v. *Martin*, 69 Mich. 29 (37 N. W. 40); *Coe* v. *Hobby*, 72 N. Y. 141 (28 Am. Rep. 120); *Talbot* v. *Whipple*, 14 Allen, 177; *Levering* v. *Langley*, 8 Minn. 107; *Fifty Associates* v. *Grace*, 125 Mass. 161 (28 Am. Rep. 218).

Judgment is affirmed.

The other Justices concurred.