## DREW *v.* BILLINGS-DREW CO.

### BALDWIN *v.* KING.

1. CORPORATIONS—AGENCY—LEASE.

A vice-president of a corporation, having entire charge of one department of the company's business, and acting as manager and agent, has authority to bind the company in leasing a room for the necessary storage of the company's property.

2. LEASE—SURRENDER BY OPERATION OF LAW.

A lessee of a building formed, with others, a corporation to carry on his business. The lessor declined to accept the corporation as his tenant for the unexpired term, but agreed

with the corporation, through its agent, who was also the lessee, that the company might occupy the building at the same rental until he could find another tenant. *Held*, that the lease was surrendered by operation of law, and the corporation liable for the rent during the time it occupied the building.

3. SAME—STATUTE OF FRAUDS.

A verbal lease which is to continue until the lessor can secure another tenant is capable of performance within a year, and, if terminated within that time, is not void under the statute of frauds. 3 Comp. Laws, § 9509.

Appeal from Wayne; Brooke, J. Submitted December 2, 1902. (Docket No. 132.) Decided December 29, 1902.

Bill by Walter B. Drew against the Billings-Drew Company, under which Charles A. King was appointed receiver. Stephen Baldwin intervened and presented a claim against defendant. From a decree for the intervener, the receiver appeals. Affirmed.

Intervener, Baldwin, leased to complainant, Drew, a three-story building (No. 62 Miami avenue, Detroit) for three years from November 1, 1896. The lease was a written one, and provided for a monthly rental of $75. Drew occupied the building for displaying and selling electric and gas fixtures and wooden mantels until February 10, 1898. One Billings was carrying on a similar business on Woodward avenue. February 10, 1898, Billings, Drew, and one Thomas Drew organized the defendant corporation. The directors were Mr. Radford, complainant, and Billings. Radford was president, Drew vice-president, and Billings secretary and treasurer. Drew and Billings conveyed their respective stocks of goods to the corporation, which established its business in the University Building, on Wilcox street. Drew's former stock of goods was immediately removed from No. 62 Miami avenue to the University Building, and some of Billings' stock of goods was removed from his store to the University Building, and the balance to 62 Miami avenue, and there stored.

On July 19, 1898, Drew filed the bill of complaint in this cause against the company, and defendant King was appointed receiver. It is conceded that the company occupied Baldwin's building for the storage of its property until about May 10, 1898. It is claimed on the part of the receiver that all the property of the company was then removed, while it is claimed on the part of the intervener that the building was still occupied by the company, and that the property was not all removed until September. Mr. Baldwin, claiming that the lease between him and Drew was surrendered upon the organization of the corporation, and that the corporation agreed to pay him rent while his building was occupied by it at the rate of $75 a month, presented a claim to the court for the rent from February 10 to September 1, 1898. The court allowed the claim, and the receiver appeals.

*Barbour & Rexford*, for appellant.

*Tarsney & Fitzpatrick*, for appellee.

GRANT, J. ( *after stating the facts*). Four defenses are interposed:

1. There is no evidence to establish the alleged agreement.

2. Drew had no authority to make it.

3. Drew, if authorized to rent storage room, could not, as the company's agent, without the consent of the directors, relieve himself of the obligations of the lease, and impose them upon the company.

4. The agreement, if any, was not in writing, and is void under the statute of frauds.

1. We think there was sufficient evidence to establish the agreement. Mr. Baldwin testified that Mr. Drew informed him of the organization of the corporation, and asked him if he would object to the company's occupying the premises; that Baldwin replied that would be owing somewhat to what they wanted to occupy it for,—that he objected to putting heavy goods in the building; that Drew said the goods would not be heavy, but light.

"I told him I would object to Billings and Drew carrying out that lease and using it as a storehouse, but that I would let them occupy it until I got a chance to rent it. They were to pay the same as the lease,—$75 per month."

Pursuant to this agreement, the corporation occupied the building. In September, Baldwin obtained an opportunity to lease the building, and notified the company to vacate. Mr. Billings testified that he knew the building was occupied by the corporation, and that it was not to be occupied rent free, but he supposed Drew would take care of the rent, as he ( Billings ) took care of his own ; meaning the rent of the store formerly occupied by him on Woodward avenue. We think there was sufficient testimony to establish the agreement.

2. Drew was vice-president of the company, and had the entire charge of the gas-fixture department. He was not acting solely in his capacity as vice-president, but as the agent of the company in control of one department of its business. If it was necessary to procure storage for some of the property under his control, he, as manager and agent, had the power to bind the company in leasing room for that purpose. His action was taken in good faith, and was evidently known to all the directors and stockholders of the corporation. His act was within the scope of his authority. 3 Clark & M. Corp. §§ 686, 700, 702, and authorities there cited.

3. It was not in the power of Mr. Drew to impose his lease upon the corporation without the consent of the directors, but we do not think this was the effect of the transaction. The evidence shows that the fair value of the rental was $75 per month. Drew had gone out of business. Mr. Baldwin's building was required for the purposes of the corporation. Drew informed Mr. Baldwin of the situation. Baldwin declined to accept the corporation as his tenant under the lease, but was willing to lease the building to the corporation at the same rental as Drew had agreed to pay him until he could secure another tenant. The result was that Baldwin released Mr. Drew,

and accepted the corporation in his stead as tenant. A surrender resulted by operation of law. *Stewart* v. *Mc-Laughlin's Estate*, 126 Mich. 1 (85 N. W. 266, 87 N. W. 218); *Donkersley* v. *Levy*, 38 Mich. 54; *Gingrass* v. *Mather*, 128 Mich. 582 (87 N. W. 758); *Youell* v. *Kridler*, 105 Mich. 344 (63 N. W. 439).

4. It follows from what has already been said that the statute of frauds does not apply. There was a surrender of the old lease and the making of a new one. The time fixed by the new lease was indefinite. It was capable of performance within a year, and was in fact performed within that time. It was therefore valid. *Smalley* v. *Mitchell*, 110 Mich. 650 (68 N. W. 978); *Carr* v. *Mc-Carthy*, 70 Mich. 258 (38 N. W. 241).

The decree is affirmed.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. CARPENTER, J., did not sit.