In re SHERWOODS, Inc.

(Circuit Court of Appeals, Second Circuit. December 9, 1913.)

No. 44.

1. BANKRUPTCY (§ 255*)—LANDLORD AND TENANT—CONTRACTUAL RELATIONS—TERMINATION.

Bankruptcy of a tenant does not terminate the contractual relations existing between it and its landlord, but the tenant remains liable, and the obligation to pay rent is not discharged as to the future unless the trustee elects to retain the lease as an asset.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 352; Dec. Dig. § 255.*]

2. BANKRUPTCY (§ 318*)—CLAIMS—RENT.

On bankruptcy of a tenant, rent accrued prior to the filing of the bankruptcy petition may be proved as any other debt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 481, 482: Dec. Dig. § 318.*]

3. BANKRUPTCY (§ 255*)—LANDLORD AND TENANT—TERMINATION OF LEASE—ELECTION BY TRUSTEE.

By the bankruptcy of a tenant in the absence of an express provision in the lease to the contrary, the term is not ended, but the leasehold interest passes to the trustee if he elects to accept it within a reasonable time, and if in the meantime he occupies the premises he is liable for reasonable rent during such period; not necessarily for the rent stipulated in the lease, though such rent may be accepted as the reasonable value of the use and occupation in the absence of a clear showing of unreasonableness.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 352; Dec. Dig. § 255.*]

4. BANKRUPTCY (§ 114*)—RECEIVERS—AUTHORITY—ASSIGNMENT OF LEASE.

Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), provides that the trustee shall be vested by operation of law with title of the bankrupt as of the date of the adjudication, and section 2, cl. 3, declares that in cases of necessity for preservation of estates a receiver may be appointed to take charge of the property of the bankrupt, etc., and clause 7 empowers the court to cause the assets of the bankrupt to be collected, reduced to money, and distributed. General Order in Bankruptcy No. 18, cl. 3 (89 Fed. viii, 32 C. C. A. xx), declares that on petition by a bankrupt's creditor, receiver, or trustee alleging that a part or all of the bankrupt's estate is perishable, the court may order the same sold with or without notice to creditors. Held, that the court under such

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

provisions has full power to authorize a bankrupt's receiver to make an assignment of a leasehold belonging to the bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 164–166; Dec. Dig. § 114.*]

5. LANDLORD AND TENANT (§ 148*) — LEASE — CONSTRUCTION — TAXES — LIABILITY.

Where a lease, containing a covenant requiring the lessee to pay taxes that should be assessed according to law during the term within two months after the taxes become a lien on the demised premises, and if they should not be so paid the amount should be added to and become a part of the next month's rent after such default, the lessee as between itself and an assignee of the lease became liable for taxes from the date they became a lien, though they were not payable under the covenant until after the assignment.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 520–532; Dec. Dig. § 148.*]

6. BANKRUPTCY (§ 318*)—CLAIMS—LANDLORD AND TENANT—TAXES—TENANT'S LIABILITY.

Where a bankrupt tenant was required to pay taxes on demised premises, which should become a lien thereon, and make payment within two months after the taxes became a lien, taxes which were assessed and which became a lien prior to the bankruptcy were "due and owing" at the time of bankruptcy, though not payable under the covenant until after the adjudication, and were therefore provable as claims against a bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 481, 482; Dec. Dig. § 318.*]

7. LANDLORD AND TENANT (§ 148*)—LIENS—ASSIGNMENT—COVENANT TO PAY TAXES.

Covenants in a lease requiring the lessee to pay taxes run with the land, and on the assignment of the lease the assignee becomes liable to the landlord for all taxes which may thereafter become due and payable under the terms of the lease while the assignee continues in possession of the premises.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 520–532; Dec. Dig. § 148.*]

8. LANDLORD AND TENANT (§ 208*)—LEASE—SURRENDER—EXECUTION OF NEW LEASE.

Where, after an assignment of a lease by the receiver of a bankrupt lessee, the lessor with the assignee's acquiescence made a new lease of the premises to a third person, such new lease operated as a surrender of the old one by operation of law, the effect of which was to relieve the tenant from further liabilities for accruing rent but did not discharge him from liability for rent and taxes previously accruing.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 737; Dec. Dig. § 208.*]

9. LANDLORD AND TENANT (§ 184*)—RENT—DEPOSIT.

Where a lease of business property obligated the lessee to pay rent and taxes, and at the time the lease was executed the lessee deposited with the lessor $2,500 to be held as security for the faithful performance of the covenants, it being provided that in case the premises became vacant during the term, or in the event of a violation of any of the covenants, the sum deposited should be retained by the lessor as and for liquidated damages and not as a penalty, the deposit was properly construed as one of indemnity for such loss as should arise from breach of the covenants.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 743–750; Dec. Dig. § 184.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

10. BANKRUPTCY (§ 155*)—BANKRUPT'S PROPERTY—RIGHTS OF TRUSTEE.

A bankrupt's trustee takes the property of the estate subject to all rights and equities existing in favor of third persons against the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 155.*]

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy proceedings of Sherwoods, Incorporated. From an order allowing certain claims of the Berghoff Brewing Association under a lease to the bankrupt, Frederick M. Leonard, as trustee, appeals and petitions to revise. Affirmed.

Hastings & Gleason, of New York City (Merwyn Mackenzie, of New York City, of counsel), for petitioner.

Richard B. Aldcroftt, Jr., of New York City, for respondent.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The Berghoff Brewing Association granted to Sherwoods, Incorporated, a written lease for a term of years beginning February 1, 1912, at a monthly rent of $875 per month. A petition in bankruptcy was filed against the lessee on April 27, 1912, and a receiver was appointed on that day who took possession of the premises and occupied the same until June 26, 1912. Prior to the time when the receiver went into possession, the lessee had occupied, but failed to pay the rent due on March 1st, as well as that due on April 1st. Rent was payable in advance on the 1st day of each month. While the rent for the month of April was by the terms of the lease due April 1st for the entire month, the court below only charged the lessee with a proportionate part of the rent down to April 26, 1912, when the lessee ceased to occupy. The contract was a New York contract, the lease having been executed there, and the premises were situated there. The New York Code provides for an apportionment of rents in the case of the death of a person or on "the determination of his or her interest." N. Y. Code Civ. Proc. § 2720.

[1] The decisions in this country are not in accord upon the question whether an adjudication in bankruptcy terminates all the contractual relations of the bankrupt so that the relation of landlord and tenant is severed. Some of the District Courts have held that it has such an effect. In re Jefferson, 93 Fed. 948; Bray v. Cobb, 100 Fed. 270. This is not the view this court has taken of the law. We have held that the tenant remains liable and the obligation to pay rent is not discharged as to the future unless the trustee elects to retain the lease as an asset. In re Roth & Appel, 181 Fed. 667, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270. This we understand is the construction which the English courts have placed upon the bankruptcy act of their country and the doctrine is supported by the weight of authority as concerns our Bankruptcy Act.

[2] There can be no doubt but that rent which has accrued prior to the date of filing the petition in bankruptcy may be proved like any other debt. In re Arnstein (D. C.) 101 Fed. 706; Remington on Bank-

ruptcy, § 654; Tiffany on Landlord & Tenant, vol. 1, pp. 94, 95. It is not necessary to determine whether the apportionment made of the rent in this case was based on a correct principle, as the trustee was not prejudiced thereby in the matter upon which he now asks us to pass.

[3] It is well settled that upon the bankruptcy of the tenant, provided this does not by the express terms of the lease terminate the tenancy, the leasehold interest passes to the trustee in bankruptcy if he elects to accept it. He has a reasonable time within which the lease may be accepted. If in the meanwhile he occupies the premises, he is liable for merely the reasonable rent while so occupying, and not for the rent stipulated in the lease itself. Nevertheless the rent so stipulated should be accepted as the reasonable worth of the use and occupation, in the absence of clear showing of unreasonableness. Remington on Bankruptcy, § 2135, note 57, p. 549.

[4] On June 26, 1912, the receiver, pursuant to an order of the District Court, executed and delivered to one Ogilvie an assignment of the lease. It is asserted that the court could not empower the receiver to make the assignment. The reason assigned is based on the provisions of the Bankruptcy Act. Section 70 of the act provides that:

"The trustee of the estate of a bankrupt, upon his appointment and qualification, * * * shall * * * be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt."

Section 2, subd. 3, grants power to—

"appoint receivers * * *. in case the courts shall find it absolutely necessary, for the preservation of estates, to take charge of the property of the bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified."

This contention that the receiver could not be authorized to assign is unsound. After the receiver takes possession it may be necessary that certain kinds of property should be sold for the very purpose of preserving it or its value. In our opinion the court has full power in such cases to order a sale and that such power is implied by clause 3 of section 2 of the act as well as by clause 7 of that section empowering the court to "cause the assets of bankrupts to be collected, reduced to money and distributed." In re Becker (D. C.) 98 Fed. 407; Loveland on Bankruptcy, 213. Moreover, authority to order a sale is expressly given to the court by General Order in Bankruptcy No. 18, cl. 3 (89 Fed. viii, 32 C. C. A. xx), which provides as follows:

"3. Upon petition by a bankrupt, creditor, receiver, or trustee, setting forth that a part or the whole of the bankrupt's estate is perishable, the nature and location of such perishable estate, and that there will be loss if the same is not sold immediately, the court, if satisfied of the facts stated and that the sale is required in the interest of the estate, may order the same to be sold, with or without notice to the creditors, and the proceeds to be deposited in court."

[5] The lease contained a provision making it the duty of the lessee to pay taxes. It provided that the lessee, its successors or assigns, should pay all taxes and assessments "which shall or may be assessed, charged or imposed according to law * * * during the term" and pay the same within "two months after any such * * * taxes or

assessments shall become a lien upon the same demised premises, * * * and if any such taxes or assessments shall not be so paid, the amount thereof shall be added to and become a part of the month's rent becoming due and payable upon the next rent day after such default," etc. The contention of the trustee is that inasmuch as by the terms of the lease the lessee was not obliged to pay the taxes until two months after they became a lien upon the premises, and as they did not become a lien until May 1st and were therefore not payable until July 1st there were no taxes for which the bankrupt was liable on June 26th, the date of the assignment to Ogilvie, and that the assignee became liable for them on July 1st, but that the taxes were subsequently released by the landlord by virtue of the new lease which he subsequently made of the premises.

[6] The fact is that the tax for 1912 had been assessed on the premises prior to the bankruptcy of the lessee, and his liability to pay the same was fixed by his covenant to pay the taxes assessed during the term, and the obligation which rested on him to make the payment was one "due and owing" at the time of the bankruptcy, although the tax was not payable until after adjudication. While taxes are not in a strict sense debts, they are so regarded in the Bankruptcy Act, and they are "legally due and owing" on the day they are assessed, even though they may not be payable until after adjudication. In re Flynn (D. C.) 134 Fed. 145; In re Fisher & Co. (D. C.) 148 Fed. 907. So in the state courts covenants on the part of a lessee to pay taxes assessed during the term have been held to impose on the lessee the duty of paying the taxes so assessed although under the law they were not payable until the term had expired. In Craig v. Summers, 47 Minn. 189, 49 N. W. 742, 15 L. R. A. 236 (1891), the lessee covenanted to pay "all rates, taxes, levies, or assessments on said premises during the continuance of the lease." The court held him liable for taxes and assessments "duly levied, charged and confirmed" upon the property during the term, although payable thereafter. And see to the same general effect Richardson v. Gordon, 188 Mass. 279, 74 N. E. 344; Blythe v. Gately, 51 Cal. 236; Ogden v. Getty, 100 App. Div. 430, 91 N. Y. Supp. 664; Vorse v. Des Moines Marble Co., 104 Iowa, 541, 73 N. W. 1064. In McManus v. Shoe & Clothing Co., 60 Mo. App. 216 (1895), the covenant was "to pay all general and special taxes on said lot and building during the existence of the term." The question was whether this was intended to apply to all taxes assessed during the term, or to taxes which became payable during the term. The court held that it applied to taxes assessed during the term and not to taxes assessed prior to that date and which became payable during the term.

[7] It is true that covenants to pay taxes run with the land and upon an assignment of the lease by a lessee an assignee becomes liable to the landlord for all taxes which may thereafter become due and payable under the terms of the lease while the assignee continues in possession of the premises. Ellis v. Bradbury, 75 Cal. 234, 17 Pac. 3; Fontaine v. Schulenburg, etc., Lumber Co., 109 Mo. 55, 18 S. W. 1147, 32 Am. St. Rep. 648; Abrahams v. Tappe, 60 Md. 317; Trask v. Graham, 47 Minn. 571, 50 N. W. 917; State v. Martin, 14 Lea (Tenn.)

92, 52 Am. Rep. 167. But where before an assignment takes place the tax has already been assessed and the liability of the lessee has been incurred under the covenant to pay taxes assessed during the term, it is not our understanding that an assignment of a lease relieves the assignor from the liability which he has already incurred even though the tax may not be payable until a time subsequent to the assignment. We do not believe, therefore, that the assignment by the receiver to Ogilvie released the bankrupt from his liability to the lessor for the tax previously assessed.

As the taxes were assessed prior to the bankruptcy and therefore constituted a debt and were provable against the bankrupt's estate, although payable at a period subsequent to the bankruptcy, it is evident that the subsequent assignment of the lease did not shift the liability from the bankrupt's estate to the assignee. And inasmuch as the liability to pay the tax was imposed on the lessee at the date of the assessment and without regard to the date of payment, it is not evident why the entire tax as assessed and not merely a part of it proportioned to the period of occupancy, might not have been charged against the lessee's estate. The liability becomes absolute at the time the assessment is made and does not depend upon the lessee's occupancy but upon the fact that it was assessed during the term. But the court below apportioned the tax exactly as it apportioned the rent. The theory upon which this was done is not disclosed. In Gedge v. Shoenberger, 83 Ky. 91, the court regarded an agreement to pay taxes as an agreement to pay them as part of the rent, regarding it as a necessary implication. In Hodgkins v. Price, 137 Mass. 13, 19, the court thought taxes not a part of the rent under such a covenant to pay them and held it unnecessary to include them in a tender of rent to prevent a forfeiture. A covenant to pay rent and a covenant to pay taxes assessed during the term are quite distinct matters. But as the lessor, who was represented at the hearing, has not objected in this court to the apportionment made in the court below, and as no objection has been made to it by the trustee, we do not deem it necessary at this time to do more than to direct attention to it. The apportionment made, if permitted to stand, does not in any way prejudice the trustee in respect to the question upon which he has asked this court to pass.

[8] After assignment by the receiver to Ogilvie, the lessor with the acquiescence of the assignee, made a new lease of the premises to a third party. The making of the new lease by the lessor during the existence of an outstanding lease, the tenant under the original lease giving up his possession to the stranger, operates as a surrender by operation of law. Drew v. Billings-Drew Co., 132 Mich. 65, 92 N. W. 774; Commercial Hotel Co. v. Brill, 123 Wis. 638, 101 N. W. 1101; Bowen v. Haskell, 53 Minn. 480, 55 N. W. 629; 24 Cyc. 1370; Taylor on Landlord & Tenant, § 512. The effect of the surrender is to relieve the tenant whose right to the possession is terminated from any further liabilities as to subsequently accruing rent. Davis v. George, 67 N. H. 393, 39 Atl. 979; Miller v. Dennis, 68 N. J. Law, 320, 53 Atl. 394; Ireland v. U. S. Mortgage Co., 175 N. Y. 491, 67 N. E. 1083. It does not, however, discharge from liabilities already accrued. It

would relieve the tenant from liability for taxes assessed after the surrender, but not from taxes assessed prior to the surrender where he had covenanted to pay taxes assessed during the term. The claim that because of the execution of this new lease the lessor forgave the liability which had been previously incurred for taxes already assessed, is a proposition wholly untenable and does not release the lessee from payment of the taxes already due. Kingsbury v. Westfall, 61 N. Y. 356; Taylor on Landlord & Tenant, § 518.

[9] In accordance with the requirements of the lease and at the time of its execution, the lessee deposited with the lessor $2,500 to be held as security for the faithful performance of the covenants. And it was provided that in case the premises became vacant during the term, or in the event of the violation of any of the covenants, this sum should be retained by the lessor "as and for liquidated damages and not as a penalty." In the event of the performance of all of the covenants by the lessee, its successors or assigns, the sum with interest at 4 per cent. was to be repaid to the lessee, its successors or assigns. The covenants for which this security was given involved not merely the payment of the rent and taxes, but also the making of repairs, assignment without consent, and certain other matters which need not be mentioned. It is well established that a stipulation in a contract that a certain sum shall be regarded as liquidated damages and not as a penalty, is not conclusive. The question whether it is to be regarded as the one or the other is a question of law and one quite independent of the agreeement of the parties to call it the one or the other. We think this deposit must be regarded as one of indemnity for such loss as should arise from a breach of covenants. See Chaude v. Shepard, 122 N. Y. 397, 25 N. E. 358. It was so treated in the court below and we discover no error in so regarding it.

[10] The deposit was made with the lessor within four months of the filing of the petition in bankruptcy, but no suggestion was made that it constituted an illegal preference under section 5128 of the Revised Statutes of the United States, and no doubt it was not open to that objection. It is also true that the bankruptcy of the lessee did not deprive the lessor of his right to retain the security. The trustee takes the bankrupt's property subject to all rights and equities existing in favor of third persons against the bankrupt. In re Swift (D. C.) 108 Fed. 212; In re Hanna (D. C.) 105 Fed. 587; In re Mullen (D. C.) 101 Fed. 413; 5 Cyc. 341.

The right of the lessee in the money which he had deposited with the lessor was to receive back with accumulated interest from the lessor upon the termination of the lease so much of the deposit as was not needed to make good the defaults upon the covenants, and upon the bankruptcy of the lessee, this right passed to the trustee. As the lessor had failed to pay the rent due on March 1st and on April 1st, the court below recognized the right of the lessor to charge against the fund on deposit, the sum of $1,643.33 for rent due from the lessee down to April 26th, the date of filing the petition in bankruptcy. But after making this deduction there was still left in the lessor's hands a balance of $856.67. The court also allowed the lessor to retain $830.65

additional; this being the proportionate share of the taxes during the period of the receiver's occupancy. This sum added to the allowance for rent aggregated $2,473.98 and left a balance of $26.02 which, with accrued interest, made $48.34. And as it appeared that the rent payable in advance on July 1st was not paid, the court recognized the lessor's right to apply this balance of $48.34 to that payment—thus appropriating the entire fund of $2,500.

But the trustee disputes the right of the court to allow the lessor to charge against the security fund the sum allowed for taxes during the receiver's occupancy, $830.65. He claims a right to have that sum set off against a like amount due from him to the lessor for the use and occupation of the premises while the receiver was in possession. But for reasons already stated the liability for the taxes was a proper charge against the deposit; was not affected by the assignment; not forgiven by the lessor. The trustee has not been prejudiced and the lessor has a right to charge against the fund all the sums authorized by the court.

The order is affirmed.